## LORENZO POREZ V. THE STATE.

### No. 7139.    Decided June 20.

1. **Arrest Without Warrant—Prevention of Consequences of Theft.**—All persons have the right to prevent the consequences of theft by seizing any personal property which has been stolen and bringing it, with the supposed thief if he can be taken, before a magistrate, or deliver the same to a peace officer for that purpose. To justify such seizure, however, there must be reasonable grounds to believe the property to be stolen, and the seizure must be openly made and the proceedings had without delay.

2. **Same.**—The owner of stolen property has not the right to pursue and take the thief dead or alive, nor is the thief deprived of all right of defense if attacked under such circumstances. But the owner of stolen property unquestionably has the right to pursue the thief and recapture his property if it can be done, and this too without a warrant; where it is impossible to procure one in time to prevent the consequences of the theft.

3. **Murder in the First Degree—Evidence.**—See the opinion for the substance of the evidence in this case which it is held is sufficient to sustain the conviction of murder in the first degree.

APPEAL from the District Court of Midland. Tried below before Hon. Wm. Kennedy.

The charge of the court submitted the issues and law of murder in both degrees and of manslaughter. It also instructed the jury as to the law relating to the prevention of the consequences of theft, in accordance with the rules announced in the opinion. Special charges submitting the issue and law of self-defense and resistance to an illegal arrest were requested by the defendant and refused by the court. The evidence is substantially set forth in the opinion.

*R. H. Zane* and *H. S. Hawkins,* for appellant.

*R. H. Harrison,* Assistant Attorney-General, for the State.

WHITE, PRESIDING JUSTICE.—This is an appeal from a judgment of conviction of murder in the first degree, with the death penalty assessed.

Appellant was charged by indictment with the murder of one Will Landrum, in the unorganized county of Upton, on the 21st day of July, 1890.

In brief, the important features shown by the evidence in this case are that deceased and one Sam Murry, who were cowboys on two neighboring ranches, had their saddles stolen, and after notifying some other parties and asking them to come on after them and assist in apprehending and arresting the thieves, they started on the trail of four Mexicans who had camped the night of the theft close to one of the ranches and who had abandoned two old saddles which were afterward

found near their camp, and which were subsequently identified as the property of two of the Mexicans. They trailed these four Mexicans thirty-five miles. At one place on the road they passed the Mexicans, who had stopped to cook their dinner, and identified their saddles on the horses ridden by the Mexicans, and they identified the defendant as one of the Mexicans. At this point Murry left the deceased to watch the Mexicans while he went back to hurry up the other parties who had promised to help make the arrest. Not meeting with these other parties, he returned in a short time and he and the deceased followed on after the Mexicans until they came to a place where they found Murry's quirt lying across the road, the quirt having also been stolen at the same time the saddle was. About 4 o'clock in the evening the Mexicans, who had gone into ambush near the road, rushed upon them and the two parties fled, the Mexicans firing at them. In their flight they separated, and two of the Mexicans followed Murry while the other two pursued the deceased, Landrum. The parties ran in an opposite direction, a running fight being kept up in their flight. Murry says: "The last time I saw the deceased he was two miles off. The defendant and one other Mexican were after him, and they were about two hundred yards behind the deceased." Murry outran the Mexicans who were pursuing him and went on back to the ranch in search of help. About an hour and a half by sun the parties who had been notified to come on and help Murry and deceased arrest the Mexicans found the deceased's horse with the saddle but no bridle on, and not far from there found deceased's hat. They then found blood within ten or fifteen feet of the road, and from that pool of blood there was an impression upon the ground, leading out from the road, as though a body had been dragged along through the brush and grass. They followed this drag and finally found the body of the deceased. There were two wounds, evidently made by a knife, on his body, and both in the breast, one near the heart. There was no sign of a struggle about the place where they first found the pool of blood nor where they found the body of deceased. The party first reaching the body saw three Mexicans some distance off, going toward Fort Stockton, and they ran when he started toward them. The defendant was positively identified as one of the Mexicans who had been with the party followed from the ranch where the saddles were stolen, and one of the defendants who had followed deceased after the deceased and Murry had separated to escape from the Mexicans. Moreover it was proved that one of the old saddles found at the ranch from which the cowboys' saddles had been stolen was a saddle which belonged to the defendant, and it was further proved that he and three other Mexicans had left Tom Green County not very long before this transaction occurred, and that they were going up in the direction of the country in which it did occur.

The defense on the trial of the case was an *alibi*. Upon this issue the jury were clearly and sufficiently instructed, as also upon the right of a party to defend himself against illegal arrest, that being also a defense in the case. The contention upon this phase was that deceased and Murry, not having any warrant for the arrest of the Mexicans, the Mexicans had the right to kill these parties in order to save themselves from being arrested by them, and that if defendant and others did kill the deceased Landrum then they did so in self-defense and to resist illegal arrest. As we have seen in this case, the Mexicans had stolen the saddles of Murry and deceased. They had seen the Mexicans in possession of the stolen property and they had the right to arrest them, whether they had a warrant or not, and recover their stolen property, for it is expressly provided by our statute that all persons have a right of preventing the consequences of theft by seizing any personal property which has been stolen, and bring it, with the supposed thief, if he can be taken, before a magistrate for examination or deliver the same to a peace officer for that purpose. To justify such seizure there must, however, be reasonable grounds to believe the property to be stolen, and the seizure must be openly made and the proceedings had without delay. Code Crim. Proc., art. 343. It is true that this Statute does not confer upon the owner of the property the right to pursue and take the thief dead or alive, nor is the thief deprived of all right of defense if attacked under such circumstances. Luera v. The State, 12 Texas Ct. App., 257. But the owners of the property unquestionably had the right to pursue the thieves and recapture their property if it could be done, and this too without a warrant, where it was impossible to procure a warrant of arrest, as seems to have been the case in this instance, the transaction having occurred upon the frontier far from officers and in an unorganized county. Upon this phase of the case the court sufficiently charged the law applicable to the facts. But at the time of the homicide the evidence shows not only that the deceased was not attempting to arrest these parties, whom he had the right to arrest, but that he was in fact fleeing from them and they were pursuing him, and had pursued him up to the time he was last seen before his dead body was found, more than two miles. If he had before that time attempted the illegal arrest of defendant and the other Mexicans he had certainly abandoned such attempt and was fleeing for his life from them when he was last seen, and it is folly to talk about defendant's right of self-defense under such circumstances.

We think it clear from the evidence that this defendant and the other Mexicans overtook the deceased, perhaps lassoed and jerked him from his horse, plunged their knives into his breast, and then dragged his dead body off into a desolate place with their lariats.

We think the charge of the court sufficiently full and explicit, and

that the court did not err in refusing the special requested instruction asked for by the defendant.

We have found no reversible error in the record, and the judgment is in all things affirmed.

*Affirmed.*

Judges all present and concurring.