MAX MOORE V. THE STATE.

No. 23269. Delivered January 30, 1946.
Rehearing Denied March 20, 1946.

230

The opinion states the case.

*Maury Hughes* and *Howard Dailey,* both of Dallas, and *Cylde Mays, William Tolbert,* and *Dave Miller,* all of Fort Worth, for appellant.

*Alfred M. Clyde,* Criminal District Attorney, *W. R. Parker, J. Elwood Winters,* and *W. E. Myres,* Assistant Criminal District Attorneys, all of Fort Worth, and *Ernest S. Goens,* State's Attorney, of Austin, for the State.

GRAVES, Judge.

Appellant was convicted of false imprisonment, and assessed a term of ninety days in jail.

The indictment alleges the unlawful and wilful detention of Mrs. Betty Jane Holt by the means of threats and the restraining her from removing from one place to another as she might see proper.

The facts show that some Dallas peace officers had found the solution of some forty-three burglaries by means of the arrest and questioning of certain persons, and had also been informed by one Skipworth as to whom and where he had disposed of certain portions of this stolen property. Among other places, it is shown that he had sold some loose diamonds to certains parties in the city of Fort Worth. Three peace officers of Dallas reported to Fort Worth, and in company with Mr. Ruddle, a Fort Worth peace officer, and a military policeman, and Mr. Skipworth, the seller of this stolen property, they visited the homes of some of the persons in possession of this property, and recovered a part of the same. Finally the officers and Skipworth came to the home of Robert Holt and Mrs. Betty Jane Holt at about midnight. They awakened Mr. Holt, who came to the door, and they informed him they were in search of a certain diamond sold to the Holts by Skipworth, who informed Holt at such time that this diamond was stolen property when he sold it to them. Mr. Holt replied that his wife had the ring, and she was in bed, that he would go and talk to her, and, leaving the door slightly ajar, upon his return he said his wife would not surrender the ring, whereupon the officers entered the house, and in company with the husband went into the living room and remained there a short time, and then entered the bedroom. Mrs. Holt having arisen from the bed. It seems that a controversy then arose as to turning this ring over to the Fort Worth police and obtaining a receipt therefor. The officers would not allow the Holts to use the telephone, and upon their query as to why, officer Ruddle, the Fort Worth policeman, informed them that both of the Holts were under arrest. They were then taken to the Fort Worth police station, and after remaining there a short time they were placed in a car and taken to Dallas, where they were asked some questions and were told that they were to be held for receiving and concealing stolen property, at which time Mrs. Holt produced the ring and gave it to the peace officers, and they were immediately placed in a car and taken back to Fort Worth, and to their home, arriving there about 4:30 o'clock in the morning. Mrs. Holt's only complaint as to her physical treatment being that the officers "said nothing direspectful, possibly, but crude."

There seems to be no question that the diamond sought was of the weight of 1.14 carat, and was stolen from Mrs. James A Talley of Temple, Texas, and there was no further question that same was purchased either from a Mr. Greene, a furniture dealer, or Mr. Skipworth, who delivered same to the Holts for a consideration of $425,00, and that they afterwards, recovered such sum from Skipworth. It is also shown that at the time the officers appeared at the Holts' home Skipworth informed Mr. Holt that such diamond was stolen property.

The Holts refused to give the ring to the officers, and eventually they were placed under arrest by Mr. Ruddle and taken to Fort Worth police station. Upon interrogation Mrs. Holt admitted she had the ring, and while at their home the Holts agreed to give the same up at the Fort Worth police station. The testimony is rather unsatisfactory as to what took place at the Fort Worth police station. However, the peace officers, including Mr. Ruddle, were also under indictment for this same offense, and therefore not entitled to testify herein under the law with the exception of appellant. Eventually the Holts and all the officers, except Mr. Ruddle, went to Dallas, Mrs. Holt still in possession of the ring, and when the officers started to lock up the Holts in jail Mrs. Holt gave them the stolen diamond, whereupon the officers took them back to Fort Worth and left them at their home at about 4:30 in the morning.

There are many complained of errors as is evidenced by sixteen bills of exceptions, many of such bills relating to the argument of counsel, the burden of which seems to have been personal matters relating to the past experiences of appellant's attorney in trials in Dallas County. It would have been more conducive to a fair trial herein should counsel have confined his remarks to the facts produced herein, and the law applicable thereto, as suggested by the trial court.

We think the trial court was in error in his charge in that in such charge, in two paragraphs, he instructed the jury that if these officers entered the house of Mr. Holt without having theretofore secured a search warrant to search said house, and not being invited therein, that such officers had no right or authority under the law to enter said house, either for the purpose of arresting any person therein, or for the purpose of recovering any property therein. We take his charge to mean that any uninvited entry in said house without a search warrant would be unauthorized under the law. However the trial court

thereafterwards doubtless took into consideration the provisions of Art. 325, C. C. P. wherein it is said:

"All persons have a right to prevent the consequences of theft by seizing any personal property which has been stolen, and bringing it, with the supposed offender, if he can be taken, before a magistrate for examination, or delivering the same to a peace officer for that purpose. To justify such seizure, there must, however, be reasonable ground to suppose the property to be stolen, and the seizure must be openly made and the proceedings had without delay."

In applying such article to the facts the court told the jury in his charge that:

"In that connection you are further charged that even though you should find from the evidence, beyond a reasonable doubt, that the defendant did detain and restrain Mrs. Holt, as charged in the indictment, yet if you find from the evidence, or if you have a reasonable doubt thereof, that the defendant, Max Moore, or any of the officers acting with him on the occasion in question, had theretofore received information, or then reasonably believed that Mrs. Holt had in her possession a diamond which had theretofore been stolen by some other person, and that the said defendant then reasonably believed that he had the right under the law to do whatever he or he and those acting with him do by way of detaining and restraining Mrs. Holt, for the purpose of recovering said diamond, then you will find the defendant not guilty."

Prior to the first above quoted charge we find the following:

"In this connection, you are further instructed that no peace officer in this state is authorized by the law to enter the private dwelling house of any person, either for the purpose of making an arrest, or for the purpose of searching such premises, or for the purpose of recovering any stolen property therefrom, unless such officer shall have first obtained a warrant of arrest for some person therein or suspected of being therein, or a search warrant permitting him to enter and search said premises, or unless invited to enter said premises by an occupant thereof."

And again we find the following in such charge:

"You are further instructed that if you find from the evidence, beyond a reasonable doubt, that any peace officers entered the private dwelling house of Mr. Holt on the occasion in question

without having theretofore secured a warrant for the arrest of some person then in said house or suspected of being in said house, and without having theretofore secured a warrant for the search of such premises, and without being invited to enter such house by an occupant thereof, that such officers had no right or authority under the law to enter said house, either for the purpose of arresting any person therein or for the purpose of making any search in said house, or for the purpose of recovering any property therein."

It is evident from a reading of these three paragraphs in the charge that the last two quoted above are in direct conflict with the portion of the charge that applied Art. 325, C. C. P. to the acts of the officers that are the basis of this indictment. Taking these three charges as given, we think same were confusing and contradictory, and the jury were doubtless unable to tell which charge they should follow as the law of the case.

We express the opinion that the trial court should not have included in his charge the portion thereof first above referred to, it being relative to the necessity of a search warrant before entering this house on the part of the officers. While such a charge was the law, there are exceptions thereto, and under these facts here presented the same was not only immaterial, but also harmful and contradictory of the last above quoted portion of the charge. The prohibition of an entry of a house without a search warrant must yield in certain instances to specific directions of the statute.

We call attention to the case of Hepworth v. State, 12 S. W. (2d) 1018, wherein in discussing Art. 325, C. C. P., supra, it is said:

"This article has uniformly been held to give the right of arrest without a warrant. Morris v. Kasling, 79 Tex. 141, 15 S. W. 226, 11 L. R. A. 398; Porez v. State, 29 Tex. App. 618, 16 S. W. 750; Smith v. State, 13 Tex. App. 507; Childress v. State, 107 Tex. Cr. R. 11, 294 S. W. 586. It is a wholesome statute, designed to give protection from thieves, and we have neither the inclination nor the legal right to nullify its salutory provisions by declaring its operation to be controlled by the terms of the search and seizure law, enacted long after article 325, and which neither expressly nor by necessary implication repeals it, in our opinion."

The Holts were told by the person who delivered this loose diamond to them that same was stolen property, and they in-

formed the officers that they had such a diamond, and failed to surrendered same to the officers; they were finally convinced of the stolen character of this diamond, and failed for forty-five minutes to surrender same. They finally agreed to surrender the diamond to the Fort Worth police station, yet they failed to do so, giving no reason therefor, but Mrs. Holt did inform the Dallas officers that she still had the diamond after the trip to the Fort Worth police station had begun. Under these circumstances could the officers, with a full knowledge of the stolen character of this diamond, and its possession by the Holts, have been justified in turning back from the door and leaving the property in the hands of the Holts? We think under the statute it was their duty to take possession of this diamond, and a failure to do so was punishable under the law. See Art. 414, P. C.; Art. 382, P. C.. In line with the Hepworth case, supra, we think that Art. 324, C. C. P. controls the provisions of the search and seizure law and is superior in this instance thereto. We think the requested charge No. 4 was applicable to the facts here presented.

The appellant objected to the trial court charging on the provisions of the general search and seizure law, and we think such objection should have been sustained. For this error the judgment is reversed and the cause remanded.

ON MOTION FOR REHEARING.

HAWKINS, Presiding Judge.

The State has filed a motion for rehearing in which it is urged (first); that we were in error in holding that the provisions of Art. 325 C. C. P. (which is set out in our original opinion) has application under the facts here present. It will be borne in mind that if a felony is committed in the view of an officer although done in a private residence the officer has the right to enter the residence and arrest the offender notwithstanding the inhibition against entering a private residence save under a warrant secured in compliance with constitutional and statutory provisions. See Agnello v. U. S., 70 Law Ed. 145, 269 U. S. 20; Hodges v. State, 107 Tex. Cr. R. 579, 298 S. W. 573 Taylor v. State, 120 Tex. Cr. R. 269, 49 S.W. (2d) 459. We are not to be understood as holding that officers are authorized upon "probable cause" from information reaching them to enter a private residence and search for alleged stolen property in the absence of a search warrant. It is not thought that Art. 325 C. C. P. goes to that extent. The State suggests in its motion that no case has been found in which our court has extended the provisions of

said article to cover facts here found to exist. If there has been any case before this court with comparable facts it has escaped our attention. Here the officers were accompanied to the residence of the Holts by the man who sold them the diamond. He there told the Holts in the officers' presence what he had already told the officers, viz: that the diamond sold the Holts was stolen property. The Holts admitted that they had bought the diamond in question and the wife then had it on her finger but refused to surrender it to the officers. In attempting to secure possession of the stolen diamond at the Holt residence the officers were not acting upon "probable cause" but upon positive knowledge from admissions there made that the diamond was there present. It was not an entry of the residence without a warrant to search in order to ascertain if alleged stolen property was in the house, but to get possession of the property admittedly there present.

The State then (second); in its motion urges that if we adhere to our ruling that under the peculiar facts here present Art. 325 C. C. P. has application, and that the detention by the officers of Mr. and Mrs. Holt at their home and taking them to the City Hall in Ft. Worth where they had promised to surrender possession of the diamond, was legal; that their further detention then became illegal and became false imprisonment because the mandatory provisions of Article 217 and 325 C. C. P. were not complied with. Said article reads as follows:

"In each case enumerated in this chapter, the person making the arrest shall immediately take the person arrested before the the magistrate who may have ordered the arrest, or before the nearest magistrate where the arrest was made without an order."

"All persons have a right to prevent the consequences of theft by seizing any personal property which has been stolen, and bringing it, with the supposed offender, if he can be taken, before a magistrate for examination, or delivering the same to a peace officer for that purpose. To justify such seizure, there must, however, be reasonable ground to suppose the property to be stolen, and the seizure must be openly made and the proceedings had without delay."

The opinion of the Supreme Court of Texas in Heath v. Boyd, 175 S. W. (2d) 214, and authorities therein cited are relied upon as supporting the State's position. In effect, the legal proposition there announced is that having detained Mr. and Mrs. Holt without a warrant of arrest or a search warrant, it

was the positive duty of the officers to immediately seek a magistrate as directed by the statutes quoted, and that a failure to do so unexcused makes the further detention a case of false imprisonment. It might be insisted that the announcement in Heath v. Boyd was "dicta," but the legal proposition appears to be sound. See 19 Tex. Jur. p. 569, Sec. 23; 35 Corpus Juris Secundum, p. 546, Sec. 31 .

We have adverted to the second ground of the State's motion for rehearing, but call attention to the fact that this phase of the case was not submitted to the jury, but the false imprisonment submitted for the jury's finding was based upon the theory only that it arose from the officers' actions at the residence of Mr. and Mrs. Holt. This being true, the grounds upon which reversal was predicated still appear to be controlling.

The motion for rehearing is overruled.