**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Julian Herrera MENDOZA, Defendant-Appellant.**

**No. 76–3860 Summary Calendar.***

United States Court of Appeals, Fifth Circuit.

Feb. 28, 1977.

Rehearing and Rehearing En Banc Denied April 11, 1977.

L. Aron Pena, Edinburg, Tex., for defendant-appellant.

Edward B. McDonough, Jr., U. S. Atty., James R. Gough, George A. Kelt, Jr., Asst. U. S. Attys., Houston, Tex., Charles Lewis, Asst. U. S. Atty., Brownsville, Tex., for plaintiff-appellee.

Before COLEMAN, GODBOLD and TJOFLAT, Circuit Judges.

PER CURIAM:

Appellant Julian Herrera Mendoza was convicted after a bench trial of possession of 3,931 pounds of marijuana with intent to distribute. On appeal he alleges that the warrantless search here was not a border search, was not attended by exigent circumstances, and was not based on probable cause. Judge Garza considered and rejected all these contentions. He found appellant guilty and sentenced him to three years, with three years special parole.

On July 14, 1976, about 6:00 p. m., Customs Officer Foster received a phone call from an informant concerning an expected

---

* Rule 18, 5 Cir., see *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir. 1970, 431 F.2d 409, Part I.

importation of marijuana. The informant stated he had overheard a conversation to the effect that on the following morning a stakebed truck would leave Donna, Texas, and travel south on FM 493 to its intersection with Highway 281. It would turn West on 281 and travel toward the Rio Grande River at the Jackson Farms area, a known smuggling point. There the truck would pick up a load of marijuana that would be crossed over from Mexico. The truck was described as a 1974 white Dodge stakebed truck, license number DW 2810. Another vehicle, description unknown, was to accompany the stakebed truck. CB radios would be utilized by the smugglers.

The informant was a private citizen who had never furnished information in the past. However Officer Foster knew that he did not supply the contraband. The information was relayed to other customs officers and surveillance was set up at the intersection FM 493 and Highway 281, which is about ½ mile from the Rio Grande. Around 9:00 p. m. on the 14th, the truck was observed by Officer McAnear at the intersection and as it proceeded down 281. Shortly thereafter, a pickup truck with an elongated cab and a CB antenna passed his location. This same truck reappeared two other times that evening. Only one other truck passed the location that night.

A second surveillance point was located west of the intersection on 281 at the Krenmeuller Road, near the river levee. Officer Perpetua was at this location and had received the information about the previous activities. Around 2:15 a. m. he sighted the pickup on 281. It made about six passes in the area. Perpetua described these as "heat runs", acting as a lookout. Officer Coleman relieved the early shift at the intersection, and he saw the pickup pass his location several times. He started to follow it.

Around 4:40 a. m. Officer Perpetua saw the stakebed truck and the pickup emerging from the area near the river at Jackson Farms, a location between the Krenmeuller Road and the intersection. Both trucks were proceeding east on 281 towards 493.

Officer Coleman, coming in the opposite direction, made a U turn to follow the trucks. As he did so the pickup pulled on the shoulder of the road, flashed its lights, and then proceeded off at a high rate of speed. Officer Coleman stated he thought the pickup was trying to divert the customs people from the stakebed truck. The pickup was never apprehended. The stakebed truck was stopped about two miles north of the intersection on 493. Perpetua testified he smelled the odor of marijuana the minute he got out of his car. When the canvas on the back of the truck was removed almost two tons of marijuana in sacks were found. Appellant, the driver of the truck, was arrested.

Appellant filed a motion to suppress alleging the officers had no probable cause to stop and search him. Though the informant's tip alone might not have been enough for probable cause under *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969) the information was fully corroborated by surveillance. Here the officers verified the time, location, vehicle and license number. The fact of two vehicles involvement was noted, as were the trial runs of the pickup. Even if the information supplied did not of itself constitute probable cause, the surveillance furnished any required information. *Weeks v. Estelle*, 5 Cir. 1976, 531 F.2d 780; *United States v. Waddy*, 5 Cir. 1976, 536 F.2d 632. Once the officers had stopped the vehicle, they detected the odor of marijuana, thus furnishing probable cause. *United States v. Torres*, 5 Cir. 1976, 537 F.2d 1299. Since a moving vehicle was involved, under these exigent circumstances, no warrant was required. *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).

The judgment of the district court is AFFIRMED.