**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**William August Halm WILLIAMS,**
**Defendant-Appellant.**

**No. 77-5007.**

United States Court of Appeals,
Fifth Circuit.

May 22, 1978.

---

3. The Supreme Court in its remand of the case did not address Gilbert's contention.

P. Bruce Kirwan, Fed. Pub. Def., Atlanta, Ga., for defendant-appellant.

William A. H. Williams, pro se.

William L. Harper, U.S. Atty., Steven W. Ludwick, Howard J. Weintraub, Asst. U.S. Attys., Atlanta, Ga., for plaintiff-appellee.

Before TUTTLE, COLEMAN and CLARK, Circuit Judges.

COLEMAN, Circuit Judge.

For the second time, a jury has convicted William A. H. Williams of extortion, of using the mails to transmit an extortionate communication, and of using a firearm to commit a felony, 18 U.S.C., §§ 1951, 876, and 924(c). The District Court sentenced Williams to a period of observation and study, 18 U.S.C., § 4205(c). Thereafter, on all counts, the maximum penalty was imposed, running consecutively, for a total of forty years, but with a stipulation that Williams will be eligible for parole consideration in six years.

Williams' first conviction was reversed, *United States v. Williams*, 5 Cir., 1975, 523 F.2d 1203, *rehearing en banc denied*, 531 F.2d 791 (1976). The details of the offenses are there reported.

On February 20, 1974, by a carefully planned ruse, and at gunpoint, Williams kidnapped Reginald Murphy, the editor of the Atlanta Constitution. Ransom, in the sum of $700,000, was paid. After 49 hours of captivity Murphy was released, unharmed. Five hours after the release, Williams was arrested at his home and the ransom money was there recovered. At the first trial, as well as at the second [held on a change of venue at Key West] Williams conceded that he did the kidnapping. There has never been any dispute about that aspect of the case. Lack of mental responsibility was the sole defense on the merits.

On this second appeal, Williams asserts several grounds for reversal.

He has filed a *pro se* brief, urging ineffectiveness of counsel. This contention is palpably without merit, *MacKenna v. Ellis*, 5 Cir., 1960, 280 F.2d 592, *cert. denied*, 368 U.S. 877, 82 S.Ct. 121, 7 L.Ed.2d 78 (1961).

The same must be said of the following contentions, raised and argued by counsel:

(1) The second trial violated the double jeopardy clause of the Constitution; (2) prosecutorial misconduct was committed when a .38 caliber revolver, found in the appellant's home on the night of his arrest, was *offered* in evidence, *but excluded* by the trial court; (3) the confession given shortly after arrest should have been suppressed; and (4) the search warrant for the Williams home was invalid because of claimed confusion about the correct number of the street address in Lilburn, Georgia.

Relying on *Dorman v. United States*, 1970, 140 U.S.App.D.C. 313, 435 F.2d 385, appellant presents the only argument that has any degree of plausibility—that his arrest was illegal because it took place without an arrest warrant, at night, at his house, without notice prior to forcing the door, and which would necessitate the suppression of the ransom money found there as well as the confession made soon thereafter.

Before going to the Murphy home, the FBI agents had accumulated a mass of information, including telephone messages by Williams and a tape recording which Williams had forced Murphy to make. When Williams took Murphy in charge at gunpoint he told him that he had been kidnapped by a "Colonel in the American Revolutionary Army". The car which picked up the ransom money was registered to Williams' family and traced to his home. The kidnap victim, Murphy, had selected a picture of Williams from a spread of photos as strongly resembling the kidnapper. An FBI agent who saw the ransom money pickup identified Williams from the photographs.

The FBI had abundant probable cause to arrest Williams.

■ The rule is that without a warrant a police officer may arrest one believed by the officer on reasonable cause to have been guilty of a felony, *United States v. Watson*, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976).

This should end the matter, except that the *Watson* opinion stated that the question is still unsettled: *"[W]hether and under what circumstances* (emphasis ours) an officer may enter a suspect's home to make a warrantless arrest", 423 U.S. at 418, footnote 6, 96 S.Ct. at 825.

We think, however, that until the Supreme Court declares otherwise, the question is settled in the Fifth Circuit.

A federal statute specifically provides that agents of the Federal Bureau of Investigation may "make arrests without warrant . . . for any felony cognizable under the laws of the United States if they have reasonable grounds to believe that the person to be arrested has committed . . such a felony", 18 U.S.C., § 3052.

Another federal statute provides that an officer may break any outer door to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance, 18 U.S.C., § 3107.

■ Although the statute facially applies only to searches pursuant to a warrant, it also applies to *warrantless* intrusions when necessitated by exigent circumstances, *United States v. Seelig*, 5 Cir., 1974, 498 F.2d 109, 113. *Seelig* further held that even the required notice may be dispensed with under exigent circumstances.

Only searches and seizures are specifically mentioned in the Fourth Amendment. If we assume, but without deciding, that the Fourth Amendment applies also to arrests accomplished in the house of the person arrested, the requirements for an arrest should *a fortiori* be no more stringent than those for a search.

Relying on *Miller v. United States*, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958), we held in *Seelig* that even the *notice* may be excused "if the facts known to the officers would justify them in being virtually certain that the [occupant] already knows their purpose so that an announcement would be a useless gesture", 498 F.2d at 113.

We cannot take the incredulous position that Williams could not have known what the FBI agents had come there to do.

Moreover, the FBI agents knocked loudly on Williams' door, identified themselves, and announced they had come there to arrest him. The house was dark and there was no response, although the Williams' automobiles, a ready means of rapid escape, were parked in the yard. When there was no response to a second announcement, an agent forced the door. Williams was immediately arrested and given the *Miranda* warnings, whereupon he pointed out the ransom bills, although they were not seized until a search warrant arrived at a later point.

■ It was perfectly reasonable for the officers to believe that Williams was in the house. The means of rapid escape, in the dark, were in the yard. The officers gave notice of their identity and purpose—which Williams ignored, at least until the door was forced. Even if the Fourth Amendment applies to arrest of an individual in his own house, this arrest did not contravene any protection guaranteed by that Amendment.

Williams' mental responsibility defense was rejected by the jury. He does not challenge this on appeal. His conviction on all counts is

AFFIRMED.