**UNITED STATES of America**

v.

**Alvin HALL.**

**No. TY–78–28–CR.**

United States District Court,
E. D. Texas,
Tyler Division.

Feb. 9, 1979.

John H. Hannah, Jr., U.S. Atty., E.D. Tex., Dane H. Smith, Asst. U.S. Atty., Tyler, Tex., for the United States.

Woodrow M. Roark, Tyler, Tex., for defendant.

## MEMORANDUM OPINION

JUSTICE, District Judge.

Defendant Alvin Hall is charged pursuant to 18 U.S.C. sections 922(h), 924(a), and 26 U.S.C. sections 5861(d), (f), (i), and 5871, with receiving and possessing an illegal firearm, namely, a shotgun, seized by deputies of the Anderson County Sheriff's Department and turned over by them to an agent of the Bureau of Alcohol, Tobacco

and Firearms (ATF). The defendant has moved to suppress the shotgun as the fruit of an illegal arrest. Before the merits of the defendant's claim are addressed, a brief sketch of the circumstances leading to the discovery and seizure of the illegal weapon by the deputies will be set out.

## FACTS

On December 13, 1977, the Sheriff's Department of Anderson County received a tip from an informant concerning the robbery of a Kentucky Fried Chicken restaurant on the previous day. The informant divulged his information at the Department office in the presence of both Sheriff Roy Herrington and Deputy Sheriff J. J. Carpenter. At the instruction of Herrington and as a consequence of the information then received, Carpenter sought and obtained a warrant for the arrest of Alvin Hall from a magistrate, Justice of the Peace Charles C. Lee.[1] The evidence reveals that Carpenter and Deputy James Todd proceeded to the home of Mrs. Ola Fay Pinson, to effect the arrest, between 4:00 and 5:00 a. m. on December 14, 1977, and that they eventually gained entry to the house.[2] After Todd stepped into the house, Hall emerged from the bathroom, where he had been flushing the toilet repeatedly, and was arrested and handcuffed by Todd.[3] Thereafter, Deputy Carpenter observed the shotgun lying on the couch in the living room. A discussion ensued concerning the shotgun's ownership and barrel length, and it was seized by the officers. Hall was taken from the house to the County Jail at approximately 5:00 a. m. His unrefuted testimony was that after his arrest, he readily agreed to take a poly-graph test regarding the Kentucky Fried Chicken robbery, that the test was never administered, and that he was not questioned about the robbery again. Later that morning, Hall was placed in a line-up with six or eight other people. Subsequently, he was brought before the Justice of the Peace who informed Hall of his rights and set the amount of bail. It is to be noted that the only infraction mentioned at this hearing was the federal offense of possession of an illegal firearm.

Although Hall was almost immediately able to post bail, Herrington and Carpenter told him that he would be held in the jail until he had talked with a man from Tyler, i. e., Special Agent F. L. Ellsworth of the ATF. Ellsworth arrived at the jail at approximately noon on December 14th and interviewed Hall for one to two hours. Hall signed a waiver of counsel form supplied by Special Agent Ellsworth, which also acknowledged that he had received the *Miranda*[4] warnings. According to the agent's testimony, the defendant thereupon made incriminating statements regarding the illegal firearm. The testimony was conflicting as to the content of the statements and the conditions under which they were made. .The Government offered Special Agent Ellsworth's written summary of the interview but no confession signed by the defendant.

## ARREST

### A.

The manner in which the warrant for the arrest of the defendant was obtained in this case—revealed with commendable frank-

---

1. The content of the tip and the procedure whereby the warrant was issued determine the validity of the arrest and are discussed in detail below.

2. The circumstances surrounding the officers' entry into the house, relevant to the question of the admissibility of the shotgun, are set forth below.

3. The precise facts surrounding the deputies' entry into the house are disputed. Both officers asserted that they entered the house through the front door, though they disagreed as to who entered first. They also related that Hall made certain statements about the shotgun, subsequent to Todd's reading the *Miranda* warnings from a departmental card. *See* n.4, *infra*. The defendant and Mrs. Pinson both testified that Carpenter entered through the rear door after Todd ordered Mrs. Pinson to open it; both denied that any warnings were read to Hall.

4. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

ness by the magistrate in his testimony—shows utter disregard by both the Sheriff's Department and the magistrate for the requirements of the Fourth Amendment.[5]

The magistrate testified that Deputy Carpenter telephoned him from the Sheriff's Department and stated that Alvin Hall was wanted for armed robbery. Carpenter was directed by the magistrate to make out an arrest warrant and present it to him for his signature. The testimony shows that the warrant was fully prepared, except for the signature, by someone other than the magistrate. When Carpenter arrived at the magistrate's home, he raised his hand, on his own volition, and stated to the magistrate that he swore that he had probable cause for arresting Alvin Hall. The only facts submitted to the magistrate by the deputy to show probable cause were that an armed robbery had been reported to the Sheriff's office and that an informant had named a suspect.

The magistrate's uncontradicted testimony was also to the effect that the warrant was issued before any affidavits were presented to him, and that he had no knowledge of any such affidavits on file elsewhere. The magistrate added that, in Anderson County, it is the frequent practice and general policy that an arrest warrant be filled out by someone in the Sheriff's Department and presented to the Justice of the Peace for the latter's signature. The supporting information on which a warrant is based, usually a general complaint form, is frequently, but not always, presented to the magistrate only after the warrant has been issued.[6]

In this regard, the Supreme Court has unambiguously stated that

[t]he decisions of this Court concerning Fourth Amendment probable cause requirements before a warrant for either arrest or search can issue require that the judicial officer issuing such a warrant be supplied with sufficient information to support an independent judgment that probable cause exists for the warrant. *Whiteley v. Warden*, 401 U.S. 560, 564, 91 S.Ct. 1031, 1035, 28 L.Ed.2d 306 (1971). The magistrate in the instant case asked only a perfunctory, "Is your informant or caller reliable?", to which Carpenter gave an affirmative answer. The deputy did not go further and give the magistrate the substance of the tip conveyed to the Sheriff's Department or the basis for his belief in the informant's reliability; indeed, the magistrate was not even told what premises had been robbed or when the robbery occurred.

■ *Whiteley* condemned a state arrest warrant because it had been issued pursuant to a complaint that consisted of "nothing more than the complainant's conclusion that the individuals named therein perpetrated the offense . . ." 401 U.S. at 565, 91 S.Ct. at 1035. The warrant here at issue, resting wholly on the deputy's unsubstantiated assertion of probable cause and based on the conclusory suspicions of an informant, is equally offensive to the Fourth Amendment.

## B.

■ An invalid warrant, however, does not necessarily undermine an otherwise lawful arrest: while the validity of a warrant turns only on the facts presented to the magistrate, the validity of an arrest itself is judged by all the facts known to the law enforcement officials. *Giordenello v. United States*, 357 U.S. 480, 488, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1968); *United States v. Rabinowitz*, 339 U.S. 56, 60, 70 S.Ct. 430,

---

5. U. S. Const. amend. IV:

 The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

6. *See* Transcript of Testimony of Charles C. Lee at 131:

 [W]e don't operate, and the county don't operate like the federal does. In other words, they will call me and say, "Need a warrant right quick; need it right now." Well, I may be in bed asleep or something. I'll say, "Okay, come on by the house and get it. I'm not coming down there."

 *See also* Transcript at 125 and 135–36.

94 L.Ed. 653 (1950); *United States v. Rose,* 541 F.2d 750 (8th Cir. 1976), *cert. denied,* 430 U.S. 908, 97 S.Ct. 1178, 51 L.Ed.2d 584 (1977). Unlike a warrantless *search,* which is presumptively invalid absent exigent circumstances, *Coolidge v. New Hampshire,* 403 U.S. 443, 454–55, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), a warrantless *arrest* in a public place can be validated by probable cause alone, and exigent circumstances need not be shown. *United States v. Watson,* 423 U.S. 411, 417, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976).[7] The Fifth Circuit, in

*United States v. Morris,* 477 F.2d 657, 663 (5th Cir.), *cert. denied,* 414 U.S. 852, 94 S.Ct. 146, 38 L.Ed.2d 101 (1973), held that an arrest was lawful "in spite of the invalid warrants if at the time . . . [the police] entered [the defendant's apartment] they had probable cause to believe that [the defendants] . . . had committed or were committing a crime. [Footnote omitted.]"[8]

Nonetheless, in this case, the quantum of information adduced at the suppression

7. The Supreme Court has indicated, however, that without a warrant or a showing of exigent circumstances, a suspect's arrest in a place where he has a reasonable expectation of privacy, *i. e.,* a non-public place, may be unreasonable and a violation of the Fourth Amendment. *United States v. Santana,* 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976). The Second Circuit, in a thorough and scholarly opinion, has recently so held, *United States v. Reed,* 572 F.2d 412 (2d Cir. 1978), as has the District of Columbia Circuit, *Dorman v. United States,* 140 U.S.App.D.C. 313, 435 F.2d 385 (1970) *(en banc); see also United States v. Killebrew,* 560 F.2d 729 (6th Cir. 1977); *United States v. Calhoun,* 542 F.2d 1094, 1102–03 (9th Cir. 1976), *cert. denied,* 429 U.S. 1064, 97 S.Ct. 792, 50 L.Ed.2d 781 (1977).

In *United States v. Watson,* 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976), the Supreme Court held that a warrantless arrest in a public place, by a person authorized by federal statute to arrest on probable cause alone, was not unconstitutional. The Court did not reach the question expressly left unresolved in *Coolidge v. New Hampshire,*

whether the forceful nighttime entry into a dwelling to arrest a person reasonably believed within, upon probable cause that he had committed a felony, under circumstances where no reason appears why an arrest warrant could not have been sought, is consistent with the Fourth Amendment.

403 U.S. at 480, 91 S.Ct. at 2045, quoting *Jones v. United States,* 357 U.S. 493, 499–500, 78 S.Ct. 1253, 2 L.Ed.2d 1514 (1958). *See United States v. Watson,* 423 U.S. at 433, 96 S.Ct. 820 (Stewart, J. concurring).

*United States v. Santana* stated that whether a warrantless arrest was unlawful turned, first, on "whether when the police first sought to arrest [the defendant], she was in a public place." 427 U.S. at 42, 96 S.Ct. at 2409. Public place, in turn, was determined by whether the arrestee had a reasonable expectation of privacy, *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), at the time and place of her arrest. *Santana,* then, stands for the proposition that when the person arrest-

ed has no reasonable expectation of privacy, probable cause suffices and no warrant is required. The clear implication is that a warrant or showing of exigent circumstances may be required when the suspect has a reasonable expectation of privacy.

8. Whether a warrant is required when a suspect is arrested at a place where he had a reasonable expectation of privacy, *see* note 7 *supra,* has been addressed by the Fifth Circuit most recently in *United States v. Campbell,* 575 F.2d 505 (5th Cir. 1978). The court held that the warrantless arrest by the FBI of defendants who opened the door to their hotel room was not unconstitutional. The panel cited the FBI's statutory authority for warrantless arrests and the implicit endorsement of that statute in *United States v. Watson,* 423 U.S. at 423 n. 13, 96 S.Ct. at 827. *Campbell* did not discuss the gloss placed on *Watson* by *Santana, i. e.,* the significance of the factual distinction between Watson's public arrest and Campbell's arrest in a place where he had a reasonable expectation of privacy.

In *United States v. Williams,* 573 F.2d 348 (5th Cir. 1978), the Fifth Circuit affirmed the conviction of the defendant when the FBI, without a warrant but with ample probable cause, had forced open and entered the defendant's house to arrest him. The court rejected the defendant's argument that his warrantless arrest in the house was unconstitutional. Acknowledging that *Watson* left the issue unresolved, the court in *Williams* said,

[w]e think however, that until the Supreme Court declares otherwise, the question is settled in the Fifth Circuit.

573 F.2d at 350. In so stating, however, the panel again specifically relied on the federal statutory grant of authority providing for warrantless arrests by the FBI. (Yet it is precisely the constitutionality of the statute when applied to arrests in the suspect's home that is at issue and that was left unresolved in *Watson.*) *Williams* went on to analogize the FBI action to a warrantless search, and the court found that exigent circumstances justified the FBI action. Therefore, the far-reaching language in the case is not necessary to the result.

hearing and within the collective knowledge of the Sheriff's Department, *United States v. Ashley*, 569 F.2d 975, 983 (5th Cir. 1978), prior to the arrest of the defendant, *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964), did not constitute probable cause for the defendant's arrest. Long ago, the Supreme Court articulated a definition of probable cause that has been consistently reaffirmed. *Carroll v. United States*, 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543 (1925). As subsequently restated in *Beck*,

> [w]hether that arrest was constitutionally valid depends . . . upon whether, at the moment the arrest was made, the officers had probable cause to make it— whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense. (Citations omitted.)

379 U.S. at 91, 85 S.Ct. at 225. *See also Gerstein v. Pugh*, 420 U.S. 103, 111–12, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975).

 The Government relies here on the information supplied to the Department by a confidential informant. The Supreme Court has established criteria for determining the sufficiency of an informant's tip as the basis for probable cause. *United States v. Harris*, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971); *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959).[9] Citing *Aguilar's* two-pronged test, the Fifth Circuit stated in *Weeks v. Estelle*, 531 F.2d 780, 781 (5th Cir. 1976):

> [I]n order for an informer's tip to serve as the *sole* basis for probable cause it must reveal (1) how the informer obtained his information and (2) why the police believed that the informer was a credible reliable person [citation omitted]. (Emphasis in original.)

A law enforcement officer may consider an informant reliable if he has given correct information in the past. *Aguilar*, 378 U.S. at 114 n. 5, 84 S.Ct. 1509; *Gonzales v. Beto*, 425 F.2d 963, 968 (5th Cir.), *cert. denied*, 400 U.S. 928, 91 S.Ct. 194, 27 L.Ed.2d 189 (1970). In this case the informant previously had been reliable, but he did not state how he had obtained the information that Hall had supposedly robbed the restaurant.[10] A tip which fails to state how the informer

---

*United States v. Morris*, 477 F.2d 657 (5th Cir. 1973), decided before both *Watson* and *United States v. Santana*, 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976), did not address the constitutional issue. In that case, the New Orleans police had ample probable cause to believe, based on their observations, that a crime was currently being committed by the occupants of the apartment and that the lives of the police officers were in danger.

Finally, *United States v. Hofman*, 488 F.2d 287 (5th Cir. 1974), also pre-*Santana*, simply relied on the broad language of *Morris*.

Although the cases of this Circuit either fail adequately to address the issue left open by the Supreme Court in *Watson* and *Santana*, or are distinguishable from the facts of this case, this court is constrained from holding that law enforcement officials are constitutionally required to secure a warrant or show exigent circumstances before arresting a suspect in a place where he has a reasonable expectation of privacy. Were the issue left to this court, it would so hold, confident that the Supreme Court is pointing in that direction.

Though not relevant to a determination of the federal constitutional question, it is worth noting that Texas law requires state law enforcement officials to obtain a warrant prior to arresting a suspect in his home. *See* note 12 *infra*.

**9.** The Court of Appeals for the District of Columbia Circuit summarized the impact of these Supreme Court decisions succinctly:

> This triology of cases [*Aguilar, Spinelli, Harris*] has thus established that either the informer must be reliable and the conclusions supported by underlying circumstances, or there must be sufficient independent corroboration (which may include knowledge of the defendant's criminal reputation) to meet the Fourth Amendment's probable cause requirement.

*United States v. Myers*, 176 U.S.App.D.C. 76, 538 F.2d 424, 425–26 (1976), *cert. denied*, 430 U.S. 908, 97 S.Ct. 1179, 51 L.Ed.2d 584 (1977).

**10.** The informant did state that he had seen Hall count some money, but that does not explain how he obtained any information regarding the robbery.

obtained the relevant information may, nevertheless, satisfy the first prong of *Aguilar*, if the tip is sufficiently detailed and is corroborated by the independent observations of the police. *Weeks*, 531 F.2d at 782, citing *Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); *Gonzales*, 425 F.2d at 969. The tip implicating this defendant was neither sufficiently detailed nor independently corroborated.

■ The evidence in this case shows that the informant's tip was the sole basis for the initial arrest of the defendant for armed robbery. The only evidence of the content of the informant's tip offered at the suppression hearing was the testimony of Deputy Carpenter and Sheriff Herrington. In response to repeated careful questioning by the court, the deputy testified that the informant gave the following information: He, the informant, had seen Alvin Hall count bills and coins at a table; he feared for his safety if his identity were revealed to Hall; the officers should be careful when they went "out there", because Hall was dangerous and had a shotgun; and dangerous dogs were around the house. Sheriff Herrington added that the informant indicated that Hall was a good suspect. The only additional information known to the Sheriff's Department was that the money allegedly counted by Hall matched the amount of money, in both paper and coins, reported taken from the Kentucky Fried Chicken establishment.

Nothing more than the informant's bald assertion of suspicion links Hall to the robbery. The informant did not state any basis for suspecting the defendant of criminal conduct other than having observed Hall count a certain amount of money. This is precisely the type of unfounded tip condemned by the Supreme Court in *Aguilar*, 378 U.S. at 113–14 n. 4, 84 S.Ct. 1509. Hall's alleged counting of money at a table is not inconsistent with innocence, absent an incriminating statement by him, a showing that the money was the same money as that taken from the Kentucky Fried Chicken restaurant, or other corroborating evidence.

■ The fact that the sum of money allegedly counted by Hall coincided with the amount reported stolen, the only connection between the two according to Deputy Carpenter, does not constitute adequate corroboration. *See United States v. Alexander*, 559 F.2d 1339, 1342–43 (5th Cir. 1977). The Sheriff's Department did not independently verify that Hall had been counting a certain sum of money so as "to negate the possibility that the informer 'fabricat[ed] his report out of the whole cloth'". *Gonzales*, 425 F.2d at 969. Indeed, the Department undertook no independent investigation or surveillance of Hall's activities, innocent or incriminating, whatsoever. *Compare, e. g., United States v. Mendoza*, 547 F.2d 952 (5th Cir. 1977); *United States v. Brennan*, 538 F.2d 711, 719–21 (5th Cir. 1976). Otherwise innocent activity cannot form the basis for probable cause for an arrest simply because an informant denotes the activity as criminal or suspicious. *United States v. Mayes*, 552 F.2d 729, 732 (6th Cir. 1977); *see Spinelli*, 393 U.S. at 414, 89 S.Ct. 584.

Though not testified to by either of the deputies, and apparently not relied upon by them to corroborate the informant's tip, there were, in fact, vicious dogs at the house where Hall was arrested. As it turned out, Hall also had a shotgun. The latter fact obviously cannot have been used to corroborate the informant's tip, since the actuality of the existence of the shotgun was not known to the deputies until after they had acted on the tip and arrested the defendant. *See United States v. Bryant*, 406 F.Supp. 635, 639 (E.D.Mich.1975). The presence of the dogs does corroborate one element of the tip, but this alone does not bring this case within the *Draper* analysis. In *Draper*, the informant described the suspect (who was unknown to the police) in considerable detail, and all of the details were verified by the independent observation of the law enforcement officers prior to arrest. Here, the informant gave very scanty information, and the only detail capable of corroboration by the deputies was the existence of the dogs. The identity of

Alvin Hall, once named, was already known to the Anderson County Sheriff's Department.[11] For this reason, then, the further fact that he had dogs at the house did not serve the same purpose as the detailed information set out in *Draper, i. e.,* identifying a suspect unknown to the law enforcement officers.

The rationale underlying the Supreme Court's preference that probable cause be determined "by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime", *Johnson v. United States,* 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948), and for the admonition that the "magistrate . . . not serve merely as a rubber stamp for the police", *Aguilar,* 378 U.S. at 111, 84 S.Ct. at 1512, is well illustrated here, since an examination of the facts and circumstances proffered by the officers to show probable cause could not have led to the issuance of a valid warrant by a neutral and detached magistrate.[12]

### SEIZURE

### A.

▮ Since the deputies[13] did not have a warrant to search the house where the de-

fendant was found, the Government seeks to justify the seizure of the shotgun as falling within the plain view doctrine enunciated in *Harris v. United States,* 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968):

> It has long been settled that objects falling in the plain view of an officer who has a right to be in a position to have that view, are subject to seizure and may be introduced in evidence. (Citations omitted.)

390 U.S. at 236, 88 S.Ct. at 993.

▮ In light of *Harris,* the Government must show that the deputies had a right to be in the position where they first saw the shotgun.[14] The Government argues, as it must, that the deputies were properly inside Mrs. Pinson's house to effect a valid arrest or, alternatively, by consent of Mrs. Pinson or the defendant. The arrest for armed robbery cannot support the deputies' presence in the house, since it has already been determined that the arrest was unconstitutional because of the absence of probable cause. Moreover, in determining whether, for the purpose of invoking the plain view doctrine, the officers were properly inside the house, the arrest must satisfy not only the federal constitutional minimum, but the requirements of state law as well.[15] In this case, the deputies

---

**11.** Deputy Todd testified that Hall was known to drive a certain car and that the Department patrolled Mrs. Pinson's house in order to locate him. Transcript of Testimony of James Todd at 15. Therefore, it is reasonable to infer that the identity of Alvin Hall was within the collective knowledge of the Sheriff's Department since none of this information was included in the informant's tip.

**12.** What is said here is not meant to imply that the Sheriff's Department should wholly ignore the type of information which the informant presented to it. Instead, such information could have stimulated further investigation, perhaps ultimately leading to probable cause. *See, e. g., United States v. Alexander,* 559 F.2d 1339, 1342–43 (5th Cir. 1977).

**13.** The fact that the improper arrest and subsequent seizure was the product of state and not federal law enforcement activity provides no defense or solace for the Government. Evidence seized by state officers in a manner violative of the Constitution must be excluded from a federal prosecution. *Elkins v. United*

*States,* 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960).

**14.** Furthermore, law enforcement officials may not invoke the plain view doctrine if they purposefully situate themselves to discover evidence they are seeking, *i. e.,* if the discovery is not inadvertent. *See Coolidge v. New Hampshire,* 403 U.S. 443, 466, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *United States v. Sokolow,* 450 F.2d 324 (5th Cir. 1971). The deputies here had some reason to think that Hall had a shotgun, but there was no apparent basis to believe it was "sawed off" or that it would be openly displayed in Mrs. Pinson's house. In any case, the defendant did not assert an absence of inadvertence.

**15.** *Cf. United States v. Di Re,* 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948) (to invoke search incident to arrest exception to warrant requirement, arrest must satisfy requirements of state law); *see also Ker v. California,* 374 U.S. 23, 37, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963) (separate opinion of White, J. joined by Black, J.;

acted in violation of state law by arresting Hall without a warrant.[16] It follows that the deputies had no right to be inside the house, unless the defendant or Mrs. Pinson consented to their entry.

The burden is on the prosecution to show that valid consent was obtained, *Bumper v. North Carolina*, 391 U.S. 543, 548, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968). In this connection, the totality of all the circumstances must be looked to in order to determine, as a matter of fact, whether consent was voluntary or was the product of duress or coercion, express or implied. *Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). The evidence shows that in the darkness of the early morning hours, two white deputies, one armed with a shotgun for "psycho-

logical" reasons, approached the house of Mrs. Pinson, where she and the defendant, both black, were then staying. One deputy went to the back door and one to the front,[17] and both started loud and persistent knocking on the doors, announcing themselves as officers and demanding entry.

In light of the conflicting testimony[18], the totality of the circumstances compels the conclusion that neither Mrs. Pinson nor the defendant voluntarily and validly consented to the deputies' entry into the house; that "the consent was coerced by threat [and] force, [and] granted only in submission to lawful authority . . . [hence] the consent [was] invalid and the search unreasonable." *Schneckloth*, 412 U.S. at 233, 93 S.Ct. at 2051.[19] For all the foregoing reasons, the plain view doctrine is unavailable to the Government in this case.

Stewart, J.; Clarke, J.); *Collins v. United States*, 289 F.2d 129 (5th Cir. 1961).

**16.** Texas law requires express statutory authorization for an arrest without a warrant, *Heath v. Boyd*, 141 Tex. 569, 175 S.W.2d 214 (1943); and *Milton v. State*, 549 S.W.2d 190 (Tex.Cr. App.1977), indicates that article 14.04 of the Code of Criminal Procedure requires exigent circumstances, as well as probable cause, to effect a warrantless arrest. Tex.Code Crim. Proc.Ann. art. 14.04 (Vernon 1977) states:

> Where it is shown by satisfactory proof to a peace officer, upon the representation of a credible person, that a felony has been committed, and that the offender is about to escape, so that there is no time to procure a warrant, such peace officer may, without warrant, pursue and arrest the accused.

*See also Tarwater v. State*, 160 Tex.Cr.R. 59, 265 S.W.2d 83, 267 S.W.2d 410 (1954). Particularly when entering a house to arrest a suspect, law enforcement officers are required by Texas law to obtain a warrant. *See Tarwater; Moore v. State*, 149 Tex.Cr.R. 229, 193 S.W.2d 204 (1946). The Government neither alleged nor proved exigent circumstances in this case.

**17.** *See* note 3 *supra*.

**18.** In essence, Hall's testimony was that he was frightened: he was afraid of Deputy Carpenter, because of the deputy's loud and assertive behavior at the house and because of his reputa-

tion for kicking in people's doors, fearful that the barking dogs might break their chains, and afraid that if the deputies were not allowed peaceable entry, they would burst in forcibly. It was for these reasons, Hall asserted, that he yelled to Deputy Carpenter that the latter would be let in as soon as Mrs. Pinson got some clothes on.

Mrs. Pinson, in turn, testified to the following effect: when the deputies—Deputy Carpenter armed with a shotgun—demanded entry, she unlocked the solid inner doors only, not opening the screen door or inviting the deputies inside. After she denied to Deputy Todd that Hall was present, Todd abruptly opened the outside screen door and entered the house. He saw Hall, arrested him, and told Mrs. Pinson to open the back door to allow Carpenter to enter.

Deputy Todd, on the other hand, testified that he explained to Mrs. Pinson that the officers had a warrant for Hall's arrest for armed robbery, that she thereupon admitted Hall was in the house, and that she opened the outside screen door and gestured as if to invite the officers inside.

**19.** *Cf. Bumper v. North Carolina*, 391 U.S. 543, 549, 88 S.Ct. 1788, 1792, 20 L.Ed.2d 797 (1968), stating that,

> [a] search conducted in reliance upon a [search] warrant cannot later be justified on the basis of consent if it turns out that the warrant was invalid. (Footnote omitted.)

## B.

Finally, the Government could argue that the discovery of the illegal weapon was sufficiently distinct from the unconstitutional[20] arrest for robbery to dissipate the taint of that illegality. In this regard, the Supreme Court stated in *Wong Sun v. United States*, 371 U.S. 471, 487–88, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963):

> [W]e need not hold that all evidence is "fruit of the poisonous tree" simply because it would not have come to light but for the illegal actions of the police. Rather the more apt question in such a case is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by the exploitation of that illegality, or instead by means sufficiently distinguishable to be purged of the primary taint." (Citations omitted.)

In this case, however, the primary illegality (that is, entering the house to execute an unconstitutional arrest) was promptly exploited: the deputies entered the house, arrested and handcuffed Hall on the armed robbery charge, and then saw the illegal weapon. If the gun had been in plain view of the deputies before they entered the house, or if the illegal object had been outside the house, a different analysis might be called for. However, the fact that the gun was first seen by the officers as a direct consequence of the illegal arrest is determinative, for neither Mrs. Pinson nor the defendant validly consented to the deputies' entry into the house, and there was no intervening factor to dissipate the taint of the primary illegality.[21]

## DEFENDANT'S STATEMENTS

With the shotgun excluded from evidence, the Government's case apparently rests solely on Hall's alleged statements to Special Agent Ellsworth. Hall argues that his statement, even if treated as a confession, was obtained in violation of his constitutional rights and is thus inadmissible, *see Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). This issue need not be reached at this time, however, since the prosecution cannot rest solely on a wholly uncorroborated confession. *Wong Sun*, 371 U.S. at 488, 83 S.Ct. 407; *United States v. Khandjian*, 489 F.2d 133 (5th Cir. 1974).

The defendant's motion to suppress tangible evidence will be granted. A motion to dismiss the indictment will be granted, absent a showing by the Government that other evidence of the defendant's possession of the illegal shotgun is available.

---

**20.** Violation of state law alone would not be sufficient to invoke the sanctions of the exclusionary rule, which is a remedy for federal constitutional—not state law—violations. *See United States v. Russell*, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973); *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

**21.** This is not to say that if Mrs. Pinson or the defendant had consented to the deputies' entry the gun would necessarily be admissible in evidence. Although Mrs. Pinson, as owner of the house, could validly consent, *see United States v. Matlock*, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974), the consent could still be so entwined in the illegal arrest as to contaminate the subsequent seizure. *See People v. Haven*, 59 Cal.2d 713, 31 Cal.Rptr. 47, 381 P.2d 927 (1963).