**Ex parte J. Loyd PARKER, Jr.**

**No. 45984.**

Court of Criminal Appeals of Texas.

Oct. 18, 1972.

Arthur Mitchell and Stephen M. Orr, of Mitchell, Yeakel, Orr & Trickey, Austin, for appellant.

Doug Crouch, Dist. Atty., and Roger W. Crampton, Asst. Dist. Atty., Fort Worth, Crawford C. Martin, Atty. Gen. of Texas, and Howard M. Fender, Asst. Atty. Gen. of Texas, Austin, and Malcolm Dade, Dallas, Jim D. Vollers, State's Atty., and Robert A. Huttash, Asst. State's Atty., Austin, for the State.

## OPINION

MORRISON, Judge.

This is a post-conviction application for Writ of Habeas Corpus under Art. 11.07, Vernon's Ann.C.C.P. Petitioner's convic-

tion was affirmed in Parker v. State, Tex. Cr.App., 457 S.W.2d 638.

For the purposes of this opinion, we note petitioner was committed to Rusk State Hospital in 1963 following a hearing to determine his competency (present sanity) to stand trial. In 1969 he was returned to Fort Worth where, following restoration of his sanity, he stood trial on the indictment pending against him.

Petitioner's first, second and fifth contentions claim that he is entitled to credit for the time he spent in the State mental hospital following the adjudication that he was incompetent to stand trial.

Initially, relying on North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L. Ed.2d 656, he maintains that Art. 46.02, Sec. 10, Vernon's Ann.C.C.P.,[1] is unconstitutional because it permits multiple punishment for the same offense. He contends that the six (6) years he spent in the hospital were punishment for his offense. He also claims that Art. 46.02, Sec. 10, supra, is unconstitutional because it "invidiously discriminates" between similar groups since it makes the crediting of pre-trial confinement discretionary while Art. 46.01, Sec. 8,[2] requires crediting for post-conviction hospitalization.

North Carolina v. Pearce, supra, holds that, upon a retrial and conviction, an individual is entitled to credit for the time served under the original sentence. Pearce, supra, offers "complete protection of the party when a second punishment is proposed in the same court, on the same facts, for the same statutory offence". However, that situation does not exist in

---

1. Art. 46.02, V.A.C.C.P. [932b]—Insanity in Defense or in Bar.
   Sec. 10
   "The time a person charged with or convicted of a criminal offense is confined in a State mental hospital under this Chapter pending trial, sentencing or appeal may in the discretion of the court be credited to the term of his sentence upon subsequent sentencing or re-sentencing. Acts 1965, 59th Leg., vol. 2, p. 317, ch. 722."

2. Art. 46.01, V.A.C.C.P. [932–1]—Mental Illness after Conviction.
   Sec. 8
   "The time a prisoner is confined in a mental hospital for treatment shall be considered time served and shall be credited to the term of his sentence, but he shall not be entitled to any commutation of sentence for good conduct while he is under treatment in a mental hospital.
   "Sec. 8 amended by Acts 1967, 60th Leg., p. 718, ch. 299, § 2, eff. Aug. 28, 1967."

the case at bar. The petitioner's hospitalization was pre-trial. Pearce, supra, does not extend to pre-trial incarceration. The constitutional implications involved in Pearce, supra, manifest themselves only after conviction. The Fifth Circuit Court of Appeals has made this distinction. In Gremillion v. Henderson, 425 F.2d 1293, decided almost a year after Pearce, supra, they held that Gremillion was not entitled to credit for time spent in jail prior to conviction. The court explicitly stated that Gremillion had no constitutional right to such credit. A few days later, in Robinson v. Beto, 5 Cir., 426 F.2d 797, they held, relying on North Carolina v. Pearce, supra, that Robinson was entitled to credit for time spent in confinement after conviction and pending appeal. Further, in Footnote (2) of our opinion in Ex parte Griffith, Tex.Cr.App., 457 S.W.2d 60, we said:

> "Robinson does not affect the discretion vested in the trial court as to credit for time served prior to sentence. In Gremillion v. Henderson, Warden, 425 F.2d 1293, the Fifth Circuit Court of Appeals held there was no federal constitutional right to credit for time served prior to sentence. See also Bennett v. State, Tex. Cr.App., 450 S.W.2d 652. Cf. Wright v. Maryland Penitentiary (4th Cir.) 429 F. 2d 1101." [3]

We cannot escape the conclusion that if Gremillion was not constitutionally entitled to credit for pre-trial time spent in jail, Art. 46.02, Sec. 10, supra, is not unconstitutional. The statute consequently controls and we uphold the discretion of the trial court in denying Parker credit for the time spent in the mental hospital [4] prior to trial.[5]

Petitioner's first, second and fifth contentions are overruled.

■ Petitioner's third, fourth and sixth contentions grow out of an agreement made by his retained counsel to only submit the question of petitioner's competency to stand trial to the jury at the 1963 sanity hearing and not to submit the issue of his sanity at the time of the commission of the offense. In order for this court to uphold petitioner's contentions, we must find that the petitioner was deprived of due process by the decision to proceed on the unitary issue alone.

In effect, petitioner asks this court to second guess the representation he received from his two retained counsel at that hearing.

Let us review the history of this case. Shortly after the homicide, petitioner's wife executed the requisite affidavit requesting a hearing on both petitioner's sanity at the time of the commission of the offense and his competency to stand trial.[6] Prior to the hearing, she filed an amended

---

3. On remand, the Court of Special Appeals of Maryland, Wright v. Warden, 11 Md. App. 673, 276 A.2d 411, specifically relying on statutory, not constitutional, grounds held that a defendant is entitled to credit for pre-trial jail time where he receives the maximum sentence provided by law.

4. See also State v. Ferguson, 280 N.C. 95, 185 S.E.2d 119.

5. Further, we note that in Schreter v. Clark, 5 Cir., 457 F.2d 1305, the court held that they would presume the sentencing judge took pre-trial jail time into consideration where the punishment assessed was less than the maximum authorized by law. The maximum punishment in the case at bar at the time of the peti-

tioner's trial was "death or life or any term of years not less than two". Petitioner received ten (10) years at the hands of the jury. Since counsel urged the jury to give petitioner credit for the time he had spent in the hospital prior to trial, we can presume they did so since they assessed far less than the maximum sentence. The original record of petitioner's conviction, on file in this court, reveals that his counsel, Alexander, urged the jury that petitioner had spent six (6) years in the Rusk State Hospital, prior to his trial, and then stated:

> "I know you will consider . . . the long confinement he has already gone through when you set his punishment."

6. Cf. State v. Olsen, Tex., 360 S.W.2d 398.

affidavit praying only for a determination of petitioner's competency to stand trial. In reaching her decision to amend the affidavit, petitioner's wife acted upon the advice of the two lawyers retained to defend him. The Honorable Charles Tessmer of Dallas and the Honorable George Cochran of Fort Worth were and are highly regarded by this court as most able practitioners of criminal law. Only Mr. Tessmer survives. He testified, at the 1972 habeas corpus hearing, that his decision to seek an adjudication of only one issue was a matter of trial strategy. The testimony of the Honorable J. E. Winters (presently Judge of the Criminal District Court #2 of Tarrant County), the prosecutor in charge of petitioner's case in 1963, is even more illuminating. He testified that prior to the hearing he had frequent conferences with Tessmer and Cochran and that a free exchange of information was the order of the day. He stated that he informed the lawyers that while the State might be in a poor position to establish petitioner's competency to stand trial, in view of the fact that the defense had hired all the psychiatrists and psychologists, they were ready to do battle on the question of petitioner's sanity at the time of the homicide. He informed them that he not only had lay witnesses who were willing to testify concerning the petitioner's sanity, but that he had the pattern of the case itself in his favor. Judge Winters stated that he told petitioner's attorneys, and we quote:

"The pattern is typical. The man killed his victim, he flees from the crime, he gets rid of the weapon and then runs to his lawyer's office for cover.

\*      \*      \*      \*      \*      \*

"These were the facts of this case, so evidently that made an impression on them. They amended their petition and

dropped the count for insanity at the commission of the offense, and we settled the matter in this courtroom."

In view of the foregoing testimony, the failure to submit the question of petitioner's sanity at the time of the commission of the offense was, apparently, a matter of trial strategy.

Petitioner's third, fourth and sixth contentions are overruled.

Petitioner's seventh contention is that he was deprived of counsel of his choice at the time of his trial in 1969. The question of the trial court's refusal to dismiss his retained counsel during the course of the trial was discussed in our original opinion, Parker v. State, supra, and need not be further discussed here.

Petitioner's seventh contention is overruled.

■ Petitioner next challenges the effectiveness of his two retained counsel at the 1969 trial, in view of the fact that they did not interpose the defense of insanity, at the time of the commission of the crime, in his behalf. The Honorable William Alexander, one of those attorneys, testified at the 1972 habeas corpus hearing that his failure to defend on the ground of insanity resulted primarily from his decision not to introduce any evidence at all; that is, to rest with the State. He stated that he felt to do otherwise would open up many areas for rebuttal,[7] whereas, if he offered no evidence, he still might claim credit for the time petitioner spent in the State hospital.[8] The Honorable Fred Fick, the other attorney, testified that during the trial he, Mrs. Parker, the petitioner and Alexander, had a conference and mutually agreed to rest with the State and not present any evidence on petitioner's behalf.

7. Alexander stated that he had talked to Carl Freund, the best known by-line newswriter in the area, and learned that Freund was prepared to testify, for the State, that he talked to petitioner on the day of the homicide, and that he was of the opinion that petitioner was sane.

8. See Footnote (5).

Petitioner's eighth contention is overruled.

Petitioner's ninth, tenth and eleventh contentions grow out of his assertion that he was denied bail prior to his 1969 trial.

The petitioner received a ten (10) year sentence at his 1969 trial and that conviction was reviewed by this court and affirmed. Petitioner did not then and has not now shown that he was injured in any way by the court's failure to grant him bail pending that trial. The deprivation of a right without any injury does not demand a remedy.

Petitioner's ninth, tenth and eleventh contentions are overruled.

Petitioner's twelfth and thirteenth contentions involve a statement that he gave to the police shortly after his surrender. He claims that the statement was obtained in violation of his constitutional rights and provided law enforcement officials with vital information which they used in building their case against him. First, we note the statement was not introduced in evidence and, therefore, the question of its voluntariness and admissibility are not before the court. Further, petitioner cites only one piece of evidence that the police obtained through the statement. He claims the testimony of witness Julian Morales could not have been secured without the statement. Morales, as the original opinion indicates, was a long time, family retainer. It is unreasonable to believe that police would not have eventually questioned him. The fact that Morales did not disclose his knowledge of the homicide until after being told about petitioner's confession does not establish that he would have lied when eventually questioned.

Petitioner's twelfth and thirteenth contentions are overruled.

The petition for habeas corpus is denied.