Larry Dwight IRVIN, Appellant,

v.

The STATE of Texas, Appellee.

No. 53239.

Court of Criminal Appeals of Texas, En Banc.

Jan. 25, 1978.

States Motion for Rehearing Denied April 12, 1978.

States Second Motion for Rehearing Denied April 26, 1978.

George R. Schilter, Houston, for appellant.

Carol S. Vance, Dist. Atty., James C. Brough and David Crump, Asst. Dist. Attys., Houston, for the State.

OPINION

TOM G. DAVIS, Judge.

Appeal is taken from a conviction for burglary with intent to commit theft. Punishment was assessed by the jury at ten years.

Appellant contends that the trial court "erred in admitting into evidence two blank pistols, keys, and ink pens over Appellant's objection." Appellant's contention is grounded on the proposition that no probable cause existed for his arrest and thus any search incident to the arrest was unlawful.

James Brooks, parts manager for Knapp Chevrolet in Houston, testified that on March 17, 1974, at approximately 10:30 p. m., he was returning to his office when he noticed that a door glass to the used car office was broken and a man was inside. The man fled when Brooks drove up. Brooks called the police and waited for them to arrive. Brooks identified appellant as the man he saw in the used car office. He stated that "the office was tore up, yes, vandalism."

Jacob Beaujon, assistant innkeeper for the Holiday Inn near Knapp Chevrolet, testified that he saw appellant the same night "hanging around in the lobby, in hallways, and also in our club." The bartender called Beaujon's attention to the fact that appellant was acting strangely, "standing next to different people he didn't know." Beaujon noticed that a pistol was sticking out of appellant's pocket. Appellant wanted to go into the club and Beaujon removed the pistol first, stating to appellant, "Before we do anything else, we'll just remove this and take it away, because nobody is going in my club with a gun sticking out of his pocket." Beaujon did not call the police at that time, but called his security personnel, who were "tied up." Beaujon had the police called about an hour-and-a-half later. Beaujon testified in response to defense counsel's questions:

"Q. Mr. Beaujon, was Mr. Irvin creating a disturbance in the Holiday Inn, a breach of the peace, so to speak?

"A. Strong tendency to, sitting uninvitedly at peoples' tables that had not invited him to sit with them. We asked for identification, which he did not have. He only had some kind of club card from another club or something—to make sure that he was there legally, not under eighteen—and just hanging around, standing—his behavior—he did not really disturb the peace, but yet there were certain tendencies for us to doubt.

"Q. He did not commit a breach of the peace, in other words?

"A. Not yet."

On redirect, Beaujon testified as follows:

"Q. You've been asked whether you saw a disturbance. Do you know of your own personal knowledge what happened when you weren't looking?

"A. No.

"Q. All right. When the police were called, do you know whether or not there was a call about a disturbance?

"A. No, we called for assistance."

Officer J. W. Connally testified that he investigated the burglary at Knapp Chevrolet and about two hours later got a call from the Holiday Inn. When he arrived, "the security man at that location had the defendant under arrest." The security guard told Connally that appellant ·"had been causing a disturbance inside the lounge," that appellant "had been waving one of the pistols around inside the lounge." Appellant was searched and Connally found one blank "starter" pistol, three sets of keys, and four Knapp Chevrolet ball-point pens on appellant. Until Connally discovered the items on appellant, he did not link appellant to the burglary. Connally and Beaujon testified that to their knowledge the security guard was not a peace officer.

John McConnell, used car manager for Knapp Chevrolet, identified the property as that stolen on March 17, 1974, from the used car office. McConnell stated that the premises were not open to the public after 5:00 p. m. on March 17, and that he did not give appellant or anyone else consent to enter his office. McConnell stated that he had hired appellant on March 12, 1974, and that appellant did not have access to the keys to the used car office.

Appellant did not testify and no evidence was presented in his behalf.

The State urges that the appellant failed to preserve this ground of error in the trial court and had presented it improperly to this Court. At the time that the items were offered into evidence, the appellant's attorney made the following objection:

"MR. SCHILTER: Your Honor, we would object to the admission of any of those exhibits into evidence on the basis that there's no proof that they were taken from the defendant while in custodial arrest. If that arrest was improper, we feel that the arrest was improper and object to it at this time."

■ While the objection leaves something to be desired from the standpoint of clarity, we find it sufficient to apprise the trial court that the appellant was objecting because the evidence was the fruit of an illegal arrest.

The State further argues that the appellant's brief failed to "state what specific evidence was admitted over specific objection." We find the contention in appellant's brief sufficient to satisfy the requirement of Art. 40.09, Sec. 9, V.A.C.C.P., which provides, in pertinent part:

". . . and if the court, upon consideration of such ground of error in the light of the arguments made in the brief, can identify and understand such point of objection, the same shall be reviewed notwithstanding any generality, vagueness or any other technical defect that may exist in the language employed to set forth such ground of error."

■ In order for evidence seized incident to arrest to be admissible, the State must show the existence of probable cause at the

time the arrest or search was made. See *Reed v. State,* Tex.Cr.App., 522 S.W.2d 916; *Washington v. State,* Tex.Cr.App., 518 S.W.2d 240; *Davis v. Mississippi,* 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969).

In determining whether the warrantless arrest was legal, we look to Arts. 14.01,[1] 14.02,[2] 14.03,[3] and 14.04,[4] V.A.C.C.P.

■ The record reflects that appellant did not commit an offense in the presence or within the view of Connally or a magistrate as required for an arrest under Arts. 14.01(b) and 14.02, supra.[5] Further, according to Connally, the arrest was not based on appellant being found in a suspicious place under circumstances which reasonably showed he had committed a felony or breach of the peace. Cf. Art. 14.03, supra. Thus, appellant's arrest can only be upheld if it meets the requirements of Art. 14.-01(a), supra, or Art. 14.04, supra.

Under Art. 14.04, supra, appellant's arrest would have been proper had Connally been presented facts by a credible person that a felony had been committed by appellant and that appellant was about to escape. Connally's testimony reveals that the only information he received regarding appellant was provided by the security officer. Assuming, arguendo, that the security officer was a credible person within the statutory

provision, the record does not reveal that a felony was committed. V.T.C.A., Penal Code, Sec. 46.02, provides that it is a third-degree felony for a person to carry a handgun on his person on premises "licensed or issued a permit by this state for the sale or service of alcoholic beverages." Nothing is presented which shows that the lounge was licensed or issued a permit to sell alcoholic beverages.

Article 14.01(a), supra, provides for an arrest by any person if a felony or an offense against the public peace is committed in his presence or within his view. As heretofore noted, the evidence was insufficient to show a felony was committed. However, Art. 14.01(a), supra, allows a citizen to make an arrest for a misdemeanor offense when it is a breach of the peace. See *Heck v. State,* Tex.Cr.App., 507 S.W.2d 737.

The security officer did not testify at trial. The only evidence before us concerning the basis for the security officer's arrest of appellant was hearsay testimony of Connally.

Aside from the obvious problem that the security guard did not testify and the only testimony regarding the basis for the arrest is the hearsay testimony[6] of Connally, the record does not reflect by either hearsay or direct evidence that the breach of peace

---

1. Article 14.01, V.A.C.C.P., provides as follows:

    "(a) A peace officer or any other person, may, without a warrant, arrest an offender when the offense is committed in his presence or within his view, if the offense is one classed as a felony or as an offense against the public peace.

    "(b) A peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view."

2. Article 14.02, V.A.C.C.P., provides as follows:

    "A peace officer may arrest, without warrant, when a felony or breach of the peace has been committed in the presence or within the view of a magistrate, and such magistrate verbally orders the arrest of the offender."

3. Article 14.03, V.A.C.C.P., provides as follows:

    "Any peace officer may arrest, without warrant, persons found in suspicious places and under circumstances which reasonably show

that such persons have been guilty of some felony or breach of the peace, or threaten, or are about to commit some offense against the laws."

4. Article 14.04, V.A.C.C.P., provides as follows:

    "Where it is shown by satisfactory proof to a peace officer, upon the representation of a credible person, that a felony has been committed, and that the offender is about to escape, so that there is no time to procure a warrant, such peace officer may, without warrant, pursue and arrest the accused."

5. We note that a private security guard is not a peace officer within the definition of Art. 2.12, V.A.C.C.P.

6. See *Kaser v. State,* Tex.Cr.App., 505 S.W.2d 806; *Rushing v. State,* Tex.Cr.App., 500 S.W.2d 667.

occurred in the presence or view of the person making the arrest as required by Art. 14.01(a), supra. Connally was not informed that appellant had a pistol on his person.

The arrest being illegal, it follows that it was error to admit the fruits incident to such arrest into evidence. Art. 38.23, V.A. C.C.P.

■ In light of the fact that appellant did not testify or offer any evidence in his behalf and Brooks identified appellant as the man he saw committing the burglary, we have reviewed the record to determine whether the admission into evidence of items seized in the search of appellant could constitute harmless error. In *Clay v. State,* Tex.Cr.App., 518 S.W.2d 550, we held that where the rape victim's identification of the defendant was unequivocal, detailed, and uncontested, and testimony of other witnesses corroborated victim's testimony, the error in admitting fruits of an unlawful search into evidence was harmless beyond a reasonable doubt. See *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Harrington v. California,* 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); *Holcomb v. State,* Tex.Cr.App., 484 S.W.2d 929. After Brooks had testified on cross examination that he had never seen appellant before and that his identification of appellant was based on the finding of items in his possession taken in the burglary, the record reflects that the following transpired on redirect examination by the State:

"Q. All right, sir. That's what I was trying to get at. You saw him well enough to give a description?

"A. Right.

"Q. But not enough to identify him in court?

"A. No, sir.

"Q. All right. Except by a general description?

"A. Right."

In light of such weak identification testimony, we cannot characterize the error in the admission of inculpatory evidence taken from appellant in an illegal search to be harmless beyond a reasonable doubt.

The judgment is reversed and the cause remanded.

## OPINION ON STATE'S MOTION FOR REHEARING

ONION, Presiding Judge.

On original submission appellant's conviction for burglary was reversed because of the improper admission of two blank pistols, keys, and ink pens over objection.

On rehearing the State contends the court overlooked or ignored uncontroverted evidence which would have been sufficient to sustain the conviction. The State argues that one of the blank pistols stolen in the robbery was taken from appellant with his consent by assistant innkeeper Beaujon before Beaujon would let the appellant enter the club room of the Holiday Inn and that therefore this pistol was not the result of the illegal arrest condemned by this Court's opinion. The State argues that the pistol was admissible into evidence and would support appellant's conviction.

While that particular blank pistol might have been admissible under the circumstances, there is no evidence that this particular pistol was one of the two pistols admitted into evidence. As a matter of fact, the arresting officer testified that when he arrived at the Holiday Inn appellant had been "arrested" by the motel security officer and that he took one of the blank pistols from appellant's pocket and the other pistol was given to him by the security officer who stated that he had taken it from appellant's hand. There is no evidence that the security officer obtained the "freely given" pistol from Beaujon. Here again we observe that the security officer was not called as a witness and what evidence was developed does not support the State's argument.

Next, the State contends that it was the appellant who first proved that he was in

possession of stolen property when arrested and that (1) this proof was sufficient to support a finding of guilty or (2) this proof along with the circumstantial evidence charge to the jury would render harmless any error in proof by the State as to the details of such possession.

■ The "proof" by the defense relied on by the State came during the cross and recross examination of James Brooks, the parts manager of the burglarized automobile agency. He testified that he came to the office during the evening when it was closed and saw a burglar in the office. He did not get a good look at the burglar, could only give a general description of him, and was able to identify appellant at the examining trial only because of "what he had in his possession."

"Q. (By defense counsel): The last question I asked you on my cross examination was that the reason that you've identified Larry Irvin is because he was found later on with something that was taken in the burglary. Is that correct?

"A. He had it in his possession when the police arrested him. Yes, sir.

"Q. And that's what you base your eye witness identification on. Is that correct?

I believe that was your answer the last time I asked the question.

"A. That's all I could go on." (S.F. 87).

The record is clear that Brooks was not present when appellant was arrested and searched and that his knowledge as to what appellant had in his possession when arrested was gained by his attending the examining trial and from what he was told by the police.

His testimony was therefore hearsay, without any probative value, and did not prove that appellant was in possession of stolen property when arrested. Thus the State's argument is without merit.

The State's motion for rehearing is overruled.