Monty Charles PICHON, Appellant,

v.

The STATE of Texas, Appellee.

No. 64137.

Court of Criminal Appeals of Texas, En Banc.

Nov. 14, 1984.

Rehearing Denied Feb. 6, 1985.

Albert S. Low, Jr., Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Michael K. Aduddell and Larry Knapp, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

Before the court en banc.

## OPINION

CAMPBELL, Judge.

The appellant was convicted in the trial court, after separate jury trials, of committing the offenses of possession of methamphetamine, trial court Cause No. 291,321, for which punishment was assessed by the trial court at three and one-half (3½) years

confinement in the Texas Department of Corrections, and aggravated robbery, trial court Cause No. 291,302, for which punishment was assessed by the trial court at eighteen (18) years confinement in the penitentiary.

Although there was an order entered to consolidate the above-styled causes, through administrative error, trial court Cause No. 291,321 was not retained by this Court, but was instead transferred to the Corpus Christi Court of Appeals.

On June 30, 1982, the Corpus Christi Court reversed the conviction in 291,321 and remanded it for a new trial. Neither the State nor the appellant petitioned this Court for discretionary review, and the decision in that cause became final. The opinion of the Corpus Christi Court, however, does not implicate nor affect the appellant's conviction for aggravated robbery.

Thus the appeal that appellant brings to this Court is from his conviction for aggravated robbery in trial court Cause No. 291,-302. Appellant challenges the sufficiency of the evidence to support the conviction, and in two grounds of error, alleges that the trial court erred in admitting into evidence certain lineup and in-court identification testimony of the victim and two police officers, in violation of appellant's rights under the state and federal constitutions. We disagree and affirm.

■ Viewed in a light most favorable to the verdict, the record reflects that the victim Barbara Kramen, on the morning of January 12, 1979, was walking across the parking lot of her apartment complex when she noticed the appellant sitting on some steps. Ms. Kramen testified that the appellant appeared to have been drunk or hungover and she walked right past him. The victim stated that, as she was putting things into her Corvette automobile, the appellant suddenly came up by her side and told her to "Drop everything, Babe, and give me the keys." She testified that the appellant had his left hand in his pocket and his right hand contained a black revolver, which to her appeared to be a .38 caliber weapon. She gave the appellant her keys and testified that he climbed into her car, backed out of her parking space and left the apartment complex.

The victim further testified that she immediately contacted the police, gave them a detailed description of her assailant, and "pressed charges." She testified that approximately ten days to two weeks after the robbery, she was asked to view a lineup conducted at the downtown police station. She stated that she was immediately able to identify the person who had robbed her, and she testified she was also able to identify a picture of the appellant as the person who took her car.

A neighbor of the victim, a Mr. Robert Ferris, testified that he saw a man getting into the victim's car on the morning of the robbery, and although he could not identify the assailant, the description that he gave to the police matched the description given by the victim. The evidence to support the jury's finding of guilt is clearly sufficient. Appellant's ground of error number three is therefore overruled.

Appellant's grounds of error number one and two may be grouped together, and the issue, reduced to its elemental form, is set out thusly: Can a defendant's face be tainted and suppressed in a criminal case, in the same way that inanimate evidence, say the product of an unreasonable search, such as a weapon or contraband, be tainted and suppressed?

The facts presented in *United States v. Crews*, 445 U.S. 463, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980) are virtually indistinguishable from the facts in the instant case.

In *Crews*, after she had been accosted and robbed at gunpoint by a young man in the women's rest room on the grounds of the Washington Monument, the victim reported the incident to the police. Several days later, after two other incidents of robbery and assault in the rest room had occurred, United States Park Police, who were aware of the rest room incidents and the similar descriptions of the robber which

all three victims of the rest room incidents had given to the police, questioned a young man whom they observed in the area of the rest rooms at the Washington Monument, and, after learning the young man's name, his age, and that he was not in school because he had just "walked away," the officers allowed him to leave, but shortly thereafter detained him when a tour guide, in response to a request by one of the officers, identified the man as one he had seen hanging around the area of the Monument on the date of the first robbery. The officers then summoned a detective who was investigating the rest room robberies.

Upon arriving at the scene the detective attempted to take a photograph of the man which could be displayed to the victims of the robberies, but weather conditions thwarted his efforts. Thereafter, the man was taken into custody, ostensibly because he was a suspected truant, and transported to police headquarters, where the police briefly questioned him, obtained a photograph of him, telephoned his school, and then released him, without ever charging him with an offense during his detention of approximately one hour. The following day, the victim of the first robbery identified the photograph of the man as being the one whom had robbed her, and thereafter, at a lineup, the woman again positively identified Crews as the robber.

Prior to trial for armed robbery, Crews moved to suppress all identification testimony, contending that his detention on the truancy charges had been merely a pretext to allow the police to obtain evidence for the robbery investigation. The trial court ruled that the detention constituted an arrest without probable cause, and, held that the products of such arrest, namely the photographic and lineup identifications, could not be introduced at trial, but with respect to the victim's ability to identify the defendant in court, the trial court ruled that an *in-court identification* (emphasis added) of the defendant by the victim at trial would be admissible. Crews was then convicted of armed robbery on this victim's testimony. On appeal, the District of Columbia Court of Appeals reversed the con-

viction, holding that the in-court identification testimony should have been excluded as a product of a violation of the defendant's Fourth Amendment rights. The Supreme Court then granted certiorari on the government's petition.

Justice Brennan, writing for a majority of the Supreme Court, found the application of the "fruit of the poisonous tree" doctrine by the Court of Appeals to be misplaced. Justice Brennan observed:

"A victim's in-court identification of the accused has three distinct elements. First, the victim is present at trial to testify as to what transpired between her and the offender, and to identify the defendant as the culprit. Second, the victim possesses knowledge of and the ability to reconstruct the prior criminal occurrence and to identify the defendant from her observations of him at the time of the crime. And third, the defendant is also physically present in the courtroom, so that the victim can observe him and compare his appearance to that of the offender. In the present case, it is our conclusion that none of these three elements 'has been come at by exploitation' of the violation of the defendant's Fourth Amendment rights. [citation omitted.]

"In this case, the robbery victim's presence in the courtroom at respondent's trial was surely not the product of any police misconduct. She had notified the authorities immediately after the attack and had given them a full description of her assailant. The very next day, she went to the police station to view photographs of possible suspects, and she voluntarily assisted the police in their investigation at all times. Thus this is not a case in which the witness' identity was discovered or her cooperation *secured only as a result of an unlawful search or arrest of the accused. Here the victim's identity was known long before there was any official misconduct, and her presence in court is thus not traceable to any Fourth Amendment violation.* (emphasis added.)

"Nor did the illegal arrest infect the victim's ability to give accurate identification testimony. Based upon her observations at the time of the robbery, the victim constructed a mental image of her assailant. At trial, she retrieved this mnemonic representation, compared it to the figure of the defendant, and positively identified him as the robber. No part of this process was affected by respondent's illegal arrest. In the language of the 'time-worn metaphor' of the poisonous tree, *Harrison v. United States*, 392 U.S. 219, 222, 88 S.Ct. 2008 [2010], 20 L.Ed. 1047 (1968), the toxin in this case was injected only after the evidentiary bud had blossomed; the fruit served at trial was not poisoned."

In the case at bar, the victim was robbed some eight days prior to the appellant being detained and *illegally*[1] (emphasis added) arrested on unrelated charges. The victim immediately notified police of the robbery and gave them a highly-detailed description of the perpetrator. Additionally, the victim testified at trial that her encounter with the appellant lasted a full five minutes, and she testified she would "never forget" his face. Corroborating and buttressing the testimony of the victim was her neighbor, who, although unable to identify the appellant, gave a detailed description of the assailant that matched the description given by the victim. Given these facts, it is indeed difficult to distinguish the instant case from *United States v. Crews*, supra, and its holding.

It is of particular interest to note that the same District of Columbia Court of Appeals, albeit with a different composition, that reversed Crews' conviction, made the following observation twenty years ago in another case with regard to the suppression of eyewitness testimony:

"Courts have gone a long way in suppressing evidence but no case as yet has held that a jury should be denied the testimony of any eyewitness to a crime because of the circumstances in which his existence and identity were learned ....

"Here no confessions or utterances of the appellants were used against them; tangible evidence obtained from appellants, such as the victim's watch, was suppressed along with the confessions. But a witness is not an inanimate object which, like contraband narcotics, a pistol or stolen goods, 'speak for themselves.' The proffer of a living witness is not to be mechanically equated with the proffer of inanimate evidentiary objects illegally seized. The fact that the name of a potential witness is disclosed to police is of no evidentiary significance per se, since the living witness is an individual human personality whose attributes of will, perception, memory and volition interact to determine what testimony he will give." *Smith and Bowden v. United States*, 324 F.2d 879 at 881. (D.C.Cir. 1963.)

Decided shortly after *Smith and Bowden*, supra, was, of course, the Supreme Court case of *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). *Wong Sun*, supra, articulated the guiding principle for determining whether evidence derivatively obtained from a violation of the Fourth Amendment is admissible against the accused at trial:

"The exclusionary prohibition extends as well to the indirect as the direct products of such invasions." 371 U.S. at 484 [83 S.Ct. at 416].

This premise is recognized by Justice Brennan in *Crews*, when he observes:

"This is not to say that the intervening photographic and lineup identifications—both of which are conceded to be suppressible fruits of the Fourth Amendment violation—could not under some circumstances affect the reliability of the in-court identification and render it inadmissible as well." 445 U.S. at 472, 100 S.Ct. at 1250.

---

**1.** For a more detailed discussion of the facts surrounding appellant's arrest and interrogation, see Judge Teague's dissenting opinion.

Significant to the disposition of the instant case, however, Justice Brennan continues to expound within the very same paragraph in *Crews* as enumerated ante:

"But in the present case the trial court expressly found that the witness' courtroom identification rested on an independent recollection of her initial encounter with the assailant, uninfluenced by the pretrial identifications, and this determination finds ample support in the record. In short, the victim's capacity to identify her assailant in court neither resulted from nor was biased by the unlawful conduct committed after she had developed that capacity." 445 U.S. at 473, 100 S.Ct. at 1251.

In the case sub judice, although the trial court did not make express findings as in *Crews*, the judge held an exhaustive pretrial hearing, and then, although concluding that appellant had been arrested without probable cause, overruled appellant's precisely worded motion to suppress the identification. Additionally, the record very graphically supports the conclusion that the victim's in-court identification of the appellant was untainted by any police misconduct.

The concurring opinions filed by Justices Powell and White in *Crews*—opinions joined respectively by Justice Blackmun and by Justice Rehnquist and Chief Justice Burger, bring us closer to a resolution of appellant's first two grounds of error and to a resolution of the query posed at pg. 423 ante, viz:

"We held in *Frisbie v. Collins* [citation omitted], 'that the power of a court to try a person for crime is not impaired by the fact that he had been brought within the court's jurisdiction' unlawfully. A holding that a defendant's face can be considered evidence suppressible for no reason other than that the defendant's presence in the courtroom is the fruit of an illegal arrest would be tantamount to holding that an *illegal arrest effectively insulates* one from conviction for any crime where an in-court identification is essential. Such a holding would be in-

consistent with the underlying rationale of Frisbie from which we have not retreated." [citations omitted] 445 U.S. at 478, 100 S.Ct. at 1253.

▓▓▓ We find the instant case is settled by Justice Brennan's majority opinion in *Crews*, and perforce the victim's in-court identification of the appellant had no causal relationship to the illegal arrest, nor was there any primary taint under *Wong Sun*, supra. We further specifically adopt Justice White's reasoning in *Crews*, and hold that a defendant's face cannot be a suppressible fruit of an illegal arrest. Appellant's first two grounds of error are overruled.

The Judgment of the trial court in Cause No. 291,302 is affirmed.

CLINTON, J., dissents.

TEAGUE, Judge, dissenting.

Monty Charles Pichon, appellant, was convicted in the trial court after separate jury trials of committing the offenses of possession of methamphetamine, for which punishment was assessed by the trial court at three and one-half (3½) years' confinement in the penitentiary, and aggravated robbery, for which punishment was assessed by the trial court at eighteen (18) years' confinement in the penitentiary.

Thereafter, he appealed both causes to this Court. On October 3, 1980, this Court ordered the two causes consolidated. However, see 1981 TEX.GEN.LAWS, ch. 291, sec. 149 at 820, effective September 1, 1981, where the legislature provided therein that a certain number of non-death penalty cases then pending in this Court would be transferred to the various intermediate courts of appeals of this State. Section 149 of the 1981 amendatory act specifically provided that this Court would retain at least 1,800 of these cases and the remainder would be transferred to the intermediate courts of appeals. Also see Art. 44.34, V.A.C.C.P. These transfers have taken place. However, through administrative error, appellant's companion case, which concerned his conviction for possession of

methamphetamine, and which had been ordered consolidated with this cause, was not retained by this Court; instead, it was transferred to the Corpus Christi Court of Appeals.

On June 30, 1982, the Corpus Christi Court of Appeals, in an unpublished opinion,[1] held that because appellant's arrest was illegal, the methamphetamine that had been seized from his person as an incident to the arrest should have been suppressed by the trial court and not admitted into evidence during his trial for possession of methamphetamine. It then ordered appellant's conviction for possession of methamphetamine reversed. Neither the State nor the appellant petitioned this Court for discretionary review. Thus, the decision of the court of appeals has now become final. Because I agree with the reasons stated and the result the court of appeals reached in its opinion, I will adopt its opinion and attach it to this opinion as an appendix.

· I hasten to point out that the opinion of the court of appeals does not directly implicate appellant's conviction for aggravated robbery, which is the conviction in this cause. The validity of that conviction is what this Court must decide in this cause.

I will commence my discussion of the facts of the case at the point where the court of appeals terminated its discussion of the events in question.

As a result of appellant's illegal arrest by Houston police officers, he was taken to the station-house where he was thereafter interrogated by the arresting officers. The record is clear that prior to the interrogation the arresting officers did not administer to appellant the *Miranda* warnings,[2] nor did they take him before a magistrate to receive same.

The arresting officers informed appellant that the only way he could clear himself of any involvement in the murder of John David Tedesco was to take and pass a polygraph examination. Appellant refused to take the test and requested the assistance of an attorney, which request was ignored by the officers. The interrogation, however, was terminated until the next day when appellant was again interrogated, but this time by different police officers. They also urged appellant to take the polygraph examination. Appellant again refused.

These officers also did not give appellant the *Miranda* warnings, take him before a magistrate, or provide him with the assistance of counsel which he had requested.

The record reflects that on the third day after his illegal arrest, appellant was again interrogated by the arresting officers, who again told him that if he took and passed a polygraph examination, that would relate to the murder of Tedesco, he would be released from custody on that charge. However, appellant was also told that if he took the examination, he had to answer each question asked by the polygraph examiner with absolute truthfulness. Appellant finally agreed to take the test.

However, prior to appellant taking the test, he was not administered the *Miranda* warnings, taken before a magistrate, or provided with the assistance of counsel by either the arresting officers or the polygraph examiner, who was also a Houston police officer.

The polygraph examiner not only asked appellant questions about the murder of Tedesco, he also asked appellant questions that related to the theft of an automobile which gave rise to the prosecution at bar. Appellant admitted to the examiner that he had committed the theft of *an* automobile.

Appellant passed the polygraph examination, as it related to the murder of Tedesco, and he was never accused of playing any part in that murder. However, appellant, together with the information obtained from the admissions he had made during the polygraph examination, that related to the theft of *an* automobile, were turned over to robbery detectives of the Houston Police Department, who soon matched up the admissions with the reported theft of

---

1. A copy of which is attached hereto.

2. See *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

an automobile that had been made by the complaining witness in this cause, which theft the complainant stated to the police had occurred at gunpoint, thus making the offense aggravated robbery.

Thereafter, robbery detectives contacted the complainant and requested that she come to the station-house to view a lineup. She did, and subsequently identified appellant in a lineup as the person who had taken her automobile at gunpoint.

The evidence in this cause is undisputed that the incriminating statements which appellant made that related to the theft of *an* automobile occurred when he had not been given the *Miranda* warnings by any police officer or a magistrate. Nor was he provided with the requested assistance of counsel after he was illegally arrested.[3]

Appellant contends on appeal that the complaining witness should not have been permitted to testify in this cause because *but for* the incriminating statements he made to the police about the theft of an automobile he would not have been linked or connected to the offense that the complaining witness had previously reported to the police.

The State counters in its brief that the fact appellant was illegally arrested is for naught in his claim that the complainant should not have been permitted to give testimony in court because the record is clear that notwithstanding appellant might have been illegally arrested, he consentually participated in the lineup where he was identified by the complaining witness. The State also argues that because the complaining witness' in court identification was based upon her independent recollection of appellant stealing her automobile at gunpoint, this renders the fact that appellant was illegally arrested immaterial and irrelevant. See *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); *Jackson v. State*, 628 S.W.2d 446 (Tex.Cr.

App.1982); *Turner v. State*, 614 S.W.2d 144 (Tex.Cr.App.1981); *Wyatt v. State*, 566 S.W.2d 597 (Tex.Cr.App.1978); *Johnson v. State*, 496 S.W.2d 72 (Tex.Cr.App.1973); *Thompson v. State*, 480 S.W.2d 624 (Tex. Cr.App.1972); *Lujan v. State*, 428 S.W.2d 336 (1968), which hold that standing alone, the fact that a defendant has been illegally arrested will not cause evidence going to either an out of court identification or an in court identification of the defendant to become inadmissible evidence. The majority of this Court erroneously "buys" the State's argument.

In this instance, the issue is not the complainant's ability or capability to identify her offender, but, instead, is whether appellant was linked or connected with that crime solely because of the incriminating statements he made after he was illegally arrested.

It should therefore be obvious that the State and the majority fail to make the following distinction. Where an accused has been unlawfully arrested and thereafter voluntarily participates in a lineup at which he is identified by a State's witness, the admissibility of an in court identification of the witness depends upon what occurred out of court regarding *the identification*. However, where an accused has been unlawfully arrested and, without first being administered the *Miranda* warnings, thereafter makes incriminating statements to the police, which statements cause him to become linked or connected with a reported crime, this may cause the in court testimony of the witness to become inadmissible evidence.

This Court has repeatedly held that if a State's witness would not have surfaced or been discovered absent the illegal interrogation of the accused, then the testimony of the witness is the fruit of the illegal interrogation and becomes inadmissible evi-

---

**3.** The importance of an accused person receiving the *Miranda* warnings lies in the fact that if the police take a suspect into custody and then ask him questions without informing him of the rights enumerated in *Miranda v. Arizona*, supra, his responses become inadmissible evidence at

his trial. In *Berkemer v. McCarty*, —— U.S. —— 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984), the Supreme Court recently reaffirmed what it had stated in *Miranda v. Arizona*, supra, regarding the police warning a suspect who is in their custody prior to any questioning by them.

dence. The question in that instance is whether, in the normal course of the investigation, would the existence of the witness have been inevitably discovered absent the illegal interrogation of the accused? See *Vanderbilt v. State*, 629 S.W.2d 709, 722 (Tex.Cr.App.1981); *McMahon v. State*, 582 S.W.2d 786 (Tex.Cr.App.1979); *Nicholas v. State*, 502 S.W.2d 169 (Tex.Cr.App.1973); *Ex parte Parker*, 485 S.W.2d 585 (Tex.Cr. App.1972); *Noble v. State*, 478 S.W.2d 83 (Tex.Cr.App.1972); *Santiago v. State*, 444 S.W.2d 758 (Tex.Cr.App.1969). Also see *Wong Sun v. United States*, 371 U.S. 471, 487–88, 83 S.Ct. 407, 417, 9 L.Ed.2d 441, 455 (1962), and *Nix v. Williams*, — U.S. —, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984). Also see *Brewer v. Williams*, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977). In this instance, we have the converse of the above situation.

The record is clear that the original investigation by homicide officers of the Houston Police Department was for the purpose of ascertaining the safety of ar-other person; not the aggravated robbery of the complainant. The investigation by the homicide officers was related solely to the murder of Tedesco. But for appellant's incriminatory statements, it never touched upon the auto theft or the aggravated robbery of the complainant, nor, but for appellant's incriminating statements, was appellant ever shown to be connected or linked with the offense at bar.

The link between the appellant and the aggravated robbery of the complainant came about only after appellant's constitutional and statutory rights had been violated by the police. I would hold that the in court testimony of the complainant—of which her in court and out of court identification testimony was a part thereof—was the fruit of appellant's illegal arrest, detention, and interrogation by the police, and thus was inadmissible evidence at his trial for the aggravated robbery of the complainant. The trial court should have granted appellant's motion to suppress the in court testimony of the complainant. It erred by not granting the motion. *Gregg v. State*, 667 S.W.2d 125 (Tex.Cr.App.1984);

*Schmidt v. State*, 659 S.W.2d 420 (Tex.Cr. App.1983); *Hudson v. State*, 662 S.W.2d 957 (Tex.Cr.App.1984).

In making this holding, I wish to emphasize the following: This is not a case where the complaining witness' in court identification and in court testimony were in no way related to or connected with appellant's illegal interrogation by the police. Instead, in this instance, the illegal interrogation was the thing that caused appellant to be linked or connected to the offense previously reported to the police by the complaining witness. Cf. *United States v. Crews*, 445 U.S. 463, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980); *Wyatt v. State*, supra. "[T]he exclusionary sanction applies to any 'fruits' of a constitutional violation—whether such evidence be tangible, physical material actually seized in an illegal search, items observed or words overheard in the course of the unlawful activity, or confessions or statements of the accused obtained during an illegal arrest and detention." *United States v. Crews*, supra, 445 U.S. at 470, 100 S.Ct. at 1249, 63 L.Ed.2d at 537. In this instance, the statements the police obtained from appellant as a result of his illegal interrogation were the direct "fruit" of a constitutional violation; the in court testimony of the complainant was the indirect "fruit" of that constitutional violation, and should have been suppressed by the trial court.

I have also carefully searched the record to see whether, in the normal course of the investigation of the aggravated robbery of the complainant, any link or connection between appellant and the aggravated robbery would have been inevitably discovered by the police. My search, however, has been in vain. Outside of appellant's incriminatory statements he made to the polygraph examiner, which information was turned over to robbery detectives who were investigating the aggravated robbery offense involving the complainant, I have found no evidence that would have established a link or connection between appellant and the aggravated robbery of the complainant.

For all of the above reasons, I respectfully dissent to the failure of this Court to reverse the judgment of conviction.

APPENDIX

(NUMBER 2277cr)

NUMBER 13–81–266–CR

COURT OF APPEALS

THIRTEENTH SUPREME JUDICIAL DISTRICT OF TEXAS

CORPUS CHRISTI

\* \* \* \* \* \*

MONTY CHARLES PICHON, Appellant,

V.

STATE OF TEXAS, Appellee.

\* \* \* \* \* \*

On appeal from the 182nd District Court of Harris County, Texas.

\* \* \* \* \* \*

Before Gerald T. Bissett; Norman L. Utter; and Noah Kennedy, J.J.

\* \* \* \* \* \*

OPINION

Appeal is perfected from conviction for possession of methamphetamine for which punishment was assessed at three and one half years. Appellant's single ground of error complains of the admission into evidence of the substance seized from him at the time of his arrest, and of testimony as to the chemical analysis of that material, his contention being that such was tainted by the illegality of the arrest itself. We agree.

The facts contained in the following recitation were developed at the hearing on appellant's motion to suppress the evidence. On January 20, 1979, Detectives Kent and Yanchak of the Houston Police Department, Homicide Division, became involved in the investigation of the recent murder of one John David Tedesco, who had been bludgeoned to death. Detectives Kent and Yanchak were approached at approximately 5:30 to 5:45 p.m. on that day by Detective Donovan who told them that two persons, a Mr. Richard Gordon and a Ms. Vicki Sue Gowen, had come to his office with information regarding the Tedesco murder. Mr. Gordon and Ms. Gowen related that a woman named Carol Dorrity had told them that she had witnessed her boyfriend, a man named "Monty," beat Tedesco to death; that Carol Dorrity had taken a cab out to see "Monty"; and that they (Gordon and Gowen) were afraid for her life. Mr. Gordon and Ms. Gowen had no personal knowledge of the crime, and their feelings of concern regarding Carol Dorrity's potential danger were pure speculation on their parts.

Based on this, Detective Donovan was able to get an address from the Yellow Cab Company. He then dispatched Detectives Kent and Yanchak to that address to see if they could find Ms. Dorrity and to see if she was, in fact, in any danger. Upon arriving at the address given, the two officers discovered it to be a trailer park. However, when they saw a cab leaving the trailer park, they stopped it and questioned its driver and occupant. Based on information derived thereby, they proceeded to Trailer No. 130. Detective Kent knocked at the front door. When appellant answered, Detective Kent identified himself and asked appellant for his name. When appellant responded, he was immediately placed under arrest for suspicion of murder and frisked, first by Detective Kent, then by Detective Yanchak. The second search produced the substance here in issue.

If appellant's arrest was unlawful, so too was the search incident to it, and the fruits thereof must be excluded. *Wong Sun v. United States*, 371 U.S. [471], 473, 484, 83 S.Ct. 407, 416 [9 L.Ed.2d 441] (1963); *Irvin v. State*, 563 S.W.2d 920, 924 (Tex.Crim. App.1978). We are here concerned with the instances in which one is subject to arrest without a warrant as set out by Articles 14.01 through 14.04 of our Code of Criminal Procedure. If the situation claimed to authorize an arrest without a warrant does not come squarely within one of the classifications therein, authority does not exist. *Heath v. Boyd*, 141 Tex.

569, 175 S.W.2d 214, 216 (1943). See *United States v. Hall,* 468 F.Supp. 123, 131 n. 16 (E.D.Tex.1979).

We limit our discussion to Article 14.04, supra, since there is no evidence whatever that the facts as they existed at the time of appellant's arrest fell into a category provided for by Articles 14.01,[1] 14.02,[2] or 14.03.[3]

Article 14.04 reads:

"Where it is shown by satisfactory proof to a peace officer, upon the representation of a credible person, that a felony has been committed, *and* that the offender is about to escape, so that there is no time to procure a warrant, such peace officer may, without warrant, pursue and arrest the accused." (Emphasis supplied.)

We find the record to be totally devoid of evidence that appellant was about to escape. *Ward v. Texas,* 316 U.S. 547, 552–53, 62 S.Ct. 1139, 1142 [86 L.Ed. 1663] (1942); *Green v. State,* 594 S.W.2d 72, 74 (Tex. Crim.App.1980). No representations to that effect were made by either Mr. Gordon or Ms. Gowen to Detective Donovan. Indeed, the testimony was to the effect that Mr. Gordon had initially called the police for the purpose of passing on the statements made to him by Ms. Dorrity on January 19, the day before he came in to make a statement. Similarly, there is no evidence to support a reasonable conclusion on the part of the arresting officer, Detective Kent, that appellant was about to flee, and no such suspicion on his part was claimed. In this the case at bar is readily distinguishable from *Tarpley v. State,* 565

S.W.2d 525 (Tex.Crim.App.1978), relied upon here by appellee. That case was replete with evidence upon which a belief that the arrestees were preparing to escape could be based. Id. at 530.

We hold that the evidence does not demonstrate the existence of circumstances justifying the warrantless arrest of appellant, and that the fruits of the search incident thereto should have been excluded upon appellant's motion. The conviction is REVERSED and the cause REMANDED.

NOAH KENNEDY
Associate Justice

Opinion not to be published. Tex.Cr. App.R. 207

Opinion delivered and filed this the 30th day of June, 1982.

---

1. Article 14.01 permits a warrantless arrest by an officer when an offense is committed in his presence or within his view.

2. Article 14.02 authorizes a warrantless arrest upon the verbal order of a magistrate when a felony or breach of the peace has been committed in the presence of or within the view of the magistrate.

3. Article 14.03 licenses a warrantless arrest by an officer under two circumstances: First, when the arrestee is found in a suspicious place

under suspicious circumstances. Here, appellant was in his living room. Second, when the officer has probable cause to believe that the arrestee has committed an assault upon a person and there is an immediate danger that such offense will be repeated. Here, the informants' fears for the well-being of Ms. Dorrity were admittedly founded upon pure speculation which, of course, cannot form the basis for probable cause. See *Leighton v. State,* 544 S.W.2d 394, 397 (Tex.Crim.App.1976); *Talbert v. State,* 489 S.W.2d 309, 311 (Tex.Crim.App.1973).