**UNITED STATES OF AMERICA, Plaintiff**

**v.**

**JAMES J. MOORHEAD, Defendant**

Criminal No. 81-30

**GOVERNMENT OF THE VIRGIN ISLANDS, Plaintiff**

**v.**

**JAMES J. MOORHEAD, Defendant**

Criminal No. 81-29

District Court of the Virgin Islands

Div. of St. Thomas and St. John

April 10, 1981

HUGH MABE, ESQ., Assistant United States Attorney (Office of the United States Attorney), St. Thomas, V.I., *for plaintiff*

LEONARD BERNARD FRANCIS, JR., ESQ., St. Thomas, V.I., *for defendant*

SILVERLIGHT, *Judge, Sitting By Designation*

## OPINION

Defendant James J. Moorhead has been charged with mail fraud (18 U.S.C. § 1341) and interstate transportation of fraudulently obtained monies (18 U.S.C. § 2314); as well as obtaining money by false pretense (14 V.I.C. § 834(2)) and embezzlement by a public official (14 V.I.C. § 1089). He moves the Court for a change of venue from the District Court Division of St. Thomas and St. John to the District Court Division of St. Croix on these charges. Defendant characterizes this request as pursuant to Rule 21 Fed. R. Crim. P. However, that rule concerns change of venue *between* districts, where-

as the transfer requested by the defendant is one within the district of the Virgin Islands and thus this request technically comes under Rule 18 Fed. R. Crim. P.

■ Defendant points to several newspaper articles published in the Virgin Islands Daily News in March 1981 concerning Mr. Moorhead's arrest as presenting prejudicial publicity which will not allow Mr. Moorhead to obtain a fair trial in St. Thomas. Defendant argues that there are fewer subscriptions to the Virgin Islands Daily News on the Island of St. Croix, and thus it would be a more appropriate place of venue for this trial.

Rule 18 Fed. R. Crim. P. states:

> Except as otherwise permitted by statute or by these rules, the prosecution shall be had in a district in which the offense was committed. The court shall fix the place of trial within the district with due regard for the convenience of the defendant and the witnesses and the prompt administration of justice.

Defendant lives on St. Thomas, and it is likely that many of the witnesses will be from St. Thomas; this Court does not anticipate that any witnesses will be from St. Croix. Insofar as the convenience of defendant and witnesses and the prompt administration of justice, St. Thomas is an appropriate forum. The Notes of the Advisory Committee on Rules to Rule 18 state in part, though:

> If the court is satisfied that there exists in the place fixed for trial prejudice against the defendant so great as to render the trial unfair, the court may, of course, fix another place of trial within the district (if there be such) where such prejudice does not exist. Cf. Rule 21 dealing with transfers between districts.

The question before the Court then, is whether there is so great a prejudice against the defendant on the island of St. Thomas that he will be unable to obtain a fair trial there.

The language of the Advisory Committee notes to Rule 18 concerning "prejudice so great as to render the trial unfair" is derived from Rule 21(a) Fed. R. Crim. P. Thus, the standards applicable to transfers between districts under Rule 21(a) are also applicable to Rule 18 transfers for prejudicial publicity.

■ Under Rule 21(a), the defendant has the burden of placing on the record material which will show a reasonable likelihood of prejudicial publicity precluding a fair trial. United States v. Abrahams, 453 F.Supp. 749, 751 (D. Mass. 1978), 1 C. Wright, FEDERAL PRACTICE AND PROCEDURE: Criminal, § 342, at 621–22 & n.18

(1969). Defendant has presented to the Court several newspaper articles on which he bases his motion for change of venue; he also claims that comments on the radio by local legislators have prejudiced his opportunity for a fair trial.

■ Defendant refers the Court to the four part test in 1 C. Wright, FEDERAL PRACTICE AND PROCEDURE: Criminal § 342 (1969) for determining whether change of venue is necessary because of pretrial publicity. As the first part of this test is not met, the Court need not analyze all parts. The first requirement is that publicity be recent, widespread and highly damaging to defendant. The newspaper articles complained of were recent and widespread: but the Court does not find them highly damaging, and does not find their dissemination precludes a fair trial for defendant Moorhead on St. Thomas.

Three of the articles presented to the Court refer directly to Mr. Moorhead; there are several others which deal generally with the topic of public corruption in the Virgin Islands Government. One article is entitled "Ex-Public Works official faces 9 charges of fraud" and was the headline for the March 3, 1981, edition of the Virgin Islands Daily News. This piece is basically a factual account of the charges, their background, and the arrest of Mr. Moorhead. A second piece, presented to the Court without a date, is entitled "Moorhead: Innocent blunder", and presents the explanations of defendant concerning these charges. The third piece, entitled "Taxpayers financed private work", was the headline for the March 23, 1981, Virgin Islands Daily News. This article concerns interviews with Mr. Harthman, on whose land three water storage tanks were built, allegedly with public money diverted by Mr. Moorhead for private use. The piece makes frequent mention of Moorhead and was prompted by the charges filed against him.

While this publicity, including two front page headlines in the largest daily newspaper in the islands, was surely heavy and likely not pleasurable for the defendant, it is not necessarily prejudicial. The articles did present "both sides", though Mr. Moorhead's position does seem less forcefully presented. Nowhere in the articles is Mr. Moorhead's guilt expressly or impliedly stated, nor are the articles inflammatory. This Court is of the opinion that after reading these articles a person could retain an open mind regarding the guilt or innocence of Mr. Moorhead. It follows from this that these articles have not poisoned the entire community such that a transfer from the district of St. Thomas is necessary.

The cases referred to by the defendant in which courts have granted a Rule 21 change of venue motion on the basis of prejudicial publicity have involved publicity much more damaging, inflammatory, and likely to prejudice the entire community against a defendant than what was written here. In Sheppard v. Maxwell, 384 U.S. 333 (1965) the defendant was on trial for murder, and there were extreme and accusatory television and newspaper articles. In Irvin v. Dowd, 366 U.S. 717 (1960) the extreme prejudice of the jury panel toward the defendant on trial for murder, and the fact that 8 of the 12 jurors admitted to believing that defendant was guilty, impelled the Court to reverse the conviction on the basis of prejudicial pretrial publicity. In United States v. Marcello, 280 F.Supp. 510 (D.C. La. 1968) aff'd 423 F.2d 993 (5th Cir. 1970) years of prejudicial publicity naming the defendant as a Mafia chief, as well as a barrage of recent inflammatory publicity, were taken into account in granting a change of venue. The Court in United States v. Florio, 13 F.R.D. 296 (S.D.N.Y. 1952) granted change of venue because of an intense pretrial publicity characterizing defendant as a labor racketeer and ex-convict. The publicity became most intense at the time of the trial.

The defendant in United States v. Williams, 523 F.2d 1203 (5th Cir. 1975) rehearing denied 531 F.2d 791, appeal after remand 573 F.2d 348, was the subject of widely publicized and televised appraisals of his personality (as the defense presented was insanity, these personality appraisals were pertinent to trial issues), and more than 100 articles in the leading local newspapers. In United States ex rel. Doggett v. Yeager, 472 F.2d 229 (3rd Cir. 1973) the Court held that due process required a new trial for the defendant convicted of bank robbery where there was a substantial likelihood that the contents of newspaper accounts making reference to defendant's retracted guilty plea and an alleged escape attempt came to the attention of the deliberating jurors.

The Court in United States v. Abrahams, 453 F.Supp. 749 (D. Mass. 1978) found that sensational and inflammatory newspaper articles painting a "black and bleak" picture of defendant's past, extensive quoting of negative comments by public officials in newspaper accounts, and prejudicial television broadcasts combined to require a change of venue. In Estes v. Texas, 381 U.S. 532 (1965) the prejudicial nature of telecasts of a two-day pretrial hearing and the prejudicial impact of television within the court itself producing a circus atmosphere were the grounds of the Court's reversal of the state court's conviction of defendant.

435

■ An element common to most of the above cases is prior publicity putting the defendant in a negative light on the basis of his past life or events not intrinsic to the crime charged. The publicity regarding Mr. Moorhead has been confined to the charges he now faces. Any prejudice to Mr. Moorhead from these articles is substantially the same prejudice that any defendant accused of a crime is subjected to as a result of being accused of wrongdoing.

The foregoing cases involve extensive publicity, usually including television, and with an inflammatory element which is likely to damage the defendant. The articles in the Virgin Islands Daily News were relatively dispassionate and balanced. One aspect which possibly could be termed inflammatory is the fact that the articles on Mr. Moorhead were part of a larger series on public corruption in the Virgin Islands. It may be that the general populace is more concerned about such crimes at present than is usual because of these articles, and is sensitive to the issue of local public corruption. Such heightened awareness does not necessarily prejudice defendant; indeed, it may well be that news of others' alleged wrongdoing would minimize the impact of the evidence in this case for the jury.

■ Defendant mentions no television broadcasts concerning this case, but does note disparaging comments on the radio by local legislators. There is no material before the Court as to the contents of such comments, when they were made, or who in particular made them. This Court finds it impossible to weigh the prejudice to defendant on such scanty evidence.

■■ Voir dire examination during the selection of the jury is designed to weed out biased jurors. The remedy of change of venue is apropos only where voir dire is unable to correct prejudices of members of the jury panel, that is, where pretrial publicity is pervasive and particularly prejudicial. Cf. United States v. Williams, supra. While the material presented to this Court does not reveal a reasonable likelihood that a fair trial is precluded in St. Thomas, the final determination of this issue must await completion of the voir dire of the jury panel. See United States v. Sinclair, 424 F.Supp. 719 (D. Del. 1976), United States v. Eilberg, 465 F.Supp. 1076 (E.D. Pa. 1979), United States v. Williams, supra. At the end of voir dire, if Mr. Moorhead desires to renew his motion for change of venue he may do so. If the answers of the members of the jury panel to the voir dire questions reveal a pervasive prejudice against Mr. Moorhead regarding this case such that it appears that he will be unable to obtain a fair trial in St. Thomas, then a change of venue at that time will be in order.

## ORDER

For the reasons set forth in the memorandum of even date, it is hereby ORDERED

That defendant's motion for a change of venue, be, and the same hereby is, denied, and both parties are ordered to have any special proposed voir dire question to the trial judge by May 1, 1981.