**PEOPLE OF THE VIRGIN ISLANDS, Plaintiff**

**v.**

**ISAAC AUSTRIE, (D.O.B.: 12-26-69), Defendant**

**PEOPLE OF THE VIRGIN ISLANDS, Plaintiff**

**v.**

**CHARMAINE CLARKE, (D.O.B.: 12-26-69), Defendant**

Crim. Nos. ST-08-CR-370, ST-08-CR-371

Superior Court of the Virgin Islands

Division of St. Thomas and St. John

June 4, 2009

20

COURTNEY REESE, ESQ., JESSE M. BETHEL, ESQ., Assistant Attorneys General, Department of Justice, St. Thomas, USVI, *Attorneys for Plaintiff.*

DAVID J. CATTIE, ESQ., Ogletree, Deakins, Nash, Smoak & Stewart, LLC, St. Thomas, USVI, *Attorney for Defendant Clarke.*

HENRY L. FEUERZEIG, ESQ., MICHAEL C. QUINN, ESQ., Dudley, Topper & Feuerzeig, LLP, St. Thomas, USVI, *Attorneys for Defendant Austrie.*

CARROLL, *Judge*

## MEMORANDUM OPINION AND ORDER

(June 4, 2009)

**THIS MATTER** is before the Court on Defendant Charmaine Clarke's Motion To Dismiss On Double Jeopardy Grounds, Motion For Change Of Venue Due To Contrived Pre-Trial Publicity and Motion For Severance of Trials; and Defendant Isaac Austrie's Motion To Join Defendant Clark's Pending Motion To Dismiss On Double Jeopardy Grounds, Or In The Alternative, For Severance And Transfer To St. Croix. The motions will be denied for the reasons set forth herein.

## STATEMENT OF THE FACTS

Defendants Isaac Austrie and Charmaine Clarke were tried together for the murder of Geffrard Fritz in a three-day jury trial that began on February 23, 2009. The victim was shot to death on the side of the road in the Smith Bay area of St. Thomas. The murder occurred in the late evening hours of May 17, 2008 around 11:00 p.m.

The People produced an eye witness who testified to seeing both Defendants at the scene of the crime seconds after it occurred. The eye witness also testified that she saw Defendant Austrie running across the street with a gun towards the waiting car of Defendant Clarke. Defendant Austrie produced his mother, Marvelyn St. Jean, as an alibi witness, who gave testimony that Defendant Austrie was always at home at night during the weekends. Both Defendants proffered the testimony of

21

Dr. Solomon Fulero, an expert witness in eye witness identifications. Defendant Clarke did not call any other witnesses.

In addition to the eye witness, the People called various Virgin Islands Police Department ("VIPD") personnel and the medical examiner. After the close of the defense case, the People called Officer Francis Brooks of the VIPD to rebut the alibi testimony of Austrie's mother. Officer Brooks was listed on the arrest report and was responsible for transporting Defendant Austrie after his arrest. The People called Officer Brooks to testify to the time of Defendant Austrie's arrest, which was on Sunday, September 7, 2008, in the early evening hours.

Officer Brooks took the stand as the last of the People's witnesses. The following exchange with the People's Attorney Jesse Bethel took place after Officer Brooks identified Defendant Austrie in Court:

> ATTORNEY BETHEL: In your official capacity as a police officer, can you explain what contact you had with Mr. Austrie on September 7, 2008 in terms of the time and what, if anything did you do?

> OFFICER BROOKS: Well, Sergeant Dwayne DeGraff, Officer Enid Edwards and I, we were instructed by the special response team, which is like a SWAT team, they were executing the warrant to pickup Mr. Austrie. They were informed that he's at Anna's Retreat grocery, which is heading west. When they neutralize it, had him in custody, we were called upon to transport him from Anna's Retreat grocery straight to Callwood Command Police Station here at the court.

> ATTORNEY BETHEL: Could you give us to the best of your correction [sic] the timeframe that this was done whether it was night, the day?

> OFFICER BROOKS: It was done at about 7:00PM the evening, early evening.

> ATTORNEY BETHEL: Now, is that based on your recollection or were you looking at anything to refresh your memory?

> OFFICER BROOKS: Based on my recollection, yes.

> ATTORNEY BETHEL: And do you recall where — what, if anything did you do with respect to Mr. Austrie — well, where did you make contact with him?

OFFICER BROOKS: Well, we were instructed via police radio to travel up, he was in custody, he was carrying a loaded firearm.

ATTORNEY BETHEL: No, I don't want you to —

Trial Tr. 112-3. While Attorneys Henry Feuerzeig, Michael Quinn and David Cattie argued for a mistrial, Attorney Bethel asked, "[y]our Honor, we would ask that that be stricken from the record." Trial Tr. 113. After the jury was excused from the courtroom, Attorney Bethel went on to explain to the court:

ATTORNEY BETHEL: Your Honor, just for the record, there is no indication . . . that any firearm was found on Mr. Brooks as part of this arrest — I mean, on Mr. Austrie. It's not in the arrest report. There is nothing in the arrest report. There is no indication. I asked Officer Brooks to restrict himself to just those things pertaining to his transporting and the time.

THE COURT: How am I going to get the jury to ignore that?

ATTORNEY BETHEL: Your Honor, a curative instruction, Your Honor.

Trial Tr. 114-5. After the Court addressed Attorney Bethel, the other attorneys had an opportunity to express themselves on the record:

ATTORNEY CATTIE: I am moving for a mistrial. . . . I can't imagine any cure for this other than a mistrial, Your Honor. We didn't invite this testimony. The Government knew they were getting into the arrest when they called Officer Brooks to the stand. They had to have been aware of this.

THE COURT: No, I don't think the Government did this intentionally.

ATTORNEY CATTIE: No, no, no. What I'm saying is, they were aware of the gun situation. In their experience they should know they cannot bring that up.

THE COURT: No, the problem is they didn't ask that question, Officer Brooks just volunteered that. And there's nothing in the police reports

23

to indicate that he had a gun on that date; is that correct, Attorney Bethel?

ATTORNEY BETHEL: I'm looking at it, Your Honor, there's no indication of any gun being found on Mr. Isaac Austrie on that date. . . .

ATTORNEY CATTIE: I'm not saying this was intentional, the Government knew there was another gun from the arrest.

Trial Tr. 116-7. The Court gave all of the attorneys an opportunity to be heard on the record. None of the defense attorneys argued that the prosecutors intentionally elicited the prejudicial testimony from Officer Brooks. After considering the arguments and all of the surrounding circumstances and facts, the Court declared a mistrial.

## DISCUSSION

### I. Mistrial on Double Jeopardy Grounds

The Defendants have now moved to dismiss the Information against them, contending that retrial in this matter is barred by the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution. The relevant portion of the U.S. Constitution states, ". . . nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law . . . ." U.S. CONST. amend. V. These specific rights guaranteed under the Fifth Amendment to the Constitution are also enumerated in the Revised Organic Act of 1954. The relevant portion states, "[n]o person shall be held to answer for a criminal offense without due process of law, and no person for the same offense shall be twice put in jeopardy of punishment . . . ." Revised Organic Act of 1954, § 3 Rights and prohibitions.

In the recent opinion in *United States v. Barnard*, the Third Circuit Court of Appeals stated that, "[w]hen a defendant has succeeded in aborting [a trial] on his own motion, the Double Jeopardy Clause of the Fifth Amendment of the U.S. Constitution bars re-trial [o]nly where the governmental conduct in question is intended to goad the defendant into moving for a mistrial." *U.S. v. Barnard*, 318 Fed. Appx. 143, 145 (3d Cir. 2009) (quoting *Oregon v. Kennedy*, 456 U.S. 667, 676, 102 S. Ct. 2083,

72 L. Ed. 2d 416 (1982)) (internal quotations omitted). It is the defendant who bears the burden of proving that a prosecutor intended to subvert the protections of the Double Jeopardy Clause. *Id.* In making a determination as to whether the government actually goaded a particular defendant into requesting a mistrial, the Third Circuit has followed the guidance set forth by the Supreme Court of the United States in *Oregon v. Kennedy*, 456 U.S. 667, 102 S. Ct. 2083, 72 L. Ed. 2d 416 (1982). "Under *Kennedy*, it is clear that a retrial is not barred even after a mistrial for prosecutorial misconduct unless 'the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial.' " *United States v. Curtis*, 683 F.2d 769 (3d Cir. 1982) (citing *Oregon v. Kennedy*, 456 U.S. 667 (1982)).

In this matter, we must examine the record to determine if the People did indeed *intend* to provoke a mistrial. The People called Officer Francis Brooks, whose name was on Defendant Austrie's arrest report, to rebut the claim of Defendant Austrie's mother that he was always at home on the weekends, even at night. The record indicates that Officer Brooks testified from his own recollection that Defendant Austrie was apprehended around 7 pm, directly rebutting the alleged alibi testimony of Defendant Austrie's mother. (Trial Tr. 112-13, Feb. 25, 2009.) In response to the People's next question, "where did you make contact with him?" (Trial Tr. 113.) Officer Brooks answered, "Well, we were instructed via police radio to travel up, he was in custody, he was carrying a loaded firearm." (Trial Tr. 113.)

██ Attorney Bethel explained to the Court that there was no indication in the arrest report of a gun being found in Defendant Austrie's possession. Attorney Bethel stated that he specifically asked Officer Brooks to restrict his testimony to, "those things pertaining to his transporting and the time." (Trial Tr. 114.) There is no evidence from this factual recitation that the People intended to provoke a mistrial by getting Officer Brooks to testify that Defendant Austrie was carrying a loaded firearm when he was arrested. Indeed, the evidence is to the contrary. The case was soon to be submitted to the jury and the parties had devoted several days of their time in the trial of the matter. The police report had not mentioned a firearm, Officer Brooks had been directed to restrict his testimony, and the question posed was not calculated to elicit the response given by Officer Brooks. The questions asked of Officer Brooks were confined to relevant rebuttal testimony. In addition, the People have

25

opposed the motion and have denied that there was any improper motive in presenting Officer Brooks as a witness. The Court accepts this representation from the prosecuting attorney as an officer of the Court.

■ Defendant Clarke argues that the People had an intent to provoke a mistrial with the bald assertion that, "[t]he government's case was in deep trouble . . . ." However, Defendant Clarke's view of the evidence is not objective and is completely speculative. The Court found at the close of the People's case, and is still of the opinion, that the People presented substantial evidence that would allow the jury to find Defendant Clarke guilty beyond a reasonable doubt of the crimes charged. Because of that background, the Court is not impressed by the argument that the People's case "was in deep trouble." It was a fair question with respect to Defendant Clarke whether the jury would find her guilty or not guilty. Although the evidence against her was primarily of a circumstantial nature, there was an eyewitness who put Defendant Clarke at the scene of the crime behind the wheel of an automobile waiting for her co-defendant, Isaac Austrie, to get in the car after allegedly killing the victim. Circumstantial evidence is sufficient to support a conviction, and this Court cannot pronounce that the case against Defendant Clarke is unsupported by legally sufficient evidence. *See Tibbs v. Florida*, 457 U.S. 31, 38 n.11, 102 S. Ct. 2211, 72 L. Ed. 2d 652 (1982) ("The verdict may be based in whole or in part on circumstantial evidence. The evidence need not exclude every reasonable hypothesis except that of guilt . . . .") (citing *United States v. Lincoln*, 630 F.2d 1313, 1316 (8th Cir. 1980)).

■ There is nothing in the record to suggest that the Information about the firearm was intentionally elicited in order to circumvent either Defendant's rights under the Double Jeopardy clause. *See U.S. v. Tafoya*, 557 F.3d 1121, 1127 (10th Cir. Feb. 24, 2009) (finding of no goading supported by the facts when the government suggested a limiting instruction and argued against a mistrial, provided a rational explanation for the mishap, affirmatively stated no intention to goad, and did not ask a question that implied any intent to goad); *see also Oregon v. Kennedy*, 456 U.S. 667, 675-76, 102 S. Ct. 2083, 72 L. Ed. 2d 416 (1982) ("Prosecutorial conduct that might be viewed as harassment or overreaching, even if sufficient to justify a mistrial on defendant's motion, therefore, does not bar retrial absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause.").

Therefore, retrial in this case is not barred. The motion to dismiss will be denied.

## II. Change of Venue Due to Publicity

■ Defendants have also moved for a change of venue, presumably pursuant to FED. R. CRIM. P. 18. The relevant portion of the rule states, "[t]he court must set the place of trial within the district with due regard for the convenience of the defendant and the witnesses, and the prompt administration of justice." FED. R. CRIM. P. 18. Under this rule, which is informed by the standards for transfer for prejudice under FED. R. CRIM. P. 21(a), a "defendant has the burden of placing on the record material which will show a reasonable likelihood of prejudicial publicity precluding a fair trial." *U.S. v. Moorhead*, 18 V.I. 431, 433 (D.V.I. Apr. 10, 1981) (denying transfer, despite publicity, because defendant failed to provide persuasive evidence that a fair trial was precluded in St. Thomas).

In *Moorhead* the defendant's case was detailed in several articles in the *Virgin Islands Daily News* ("*Daily News*") and the case was discussed on the radio by local legislators. In describing the nature of the prejudice, the Court noted that the newspaper articles included "two front page headlines" and were part of a larger series on public corruption in the Virgin Islands. *Moorhead*, 18 V.I. at 434. Although there was no television news coverage in the *Moorhead* case, there was radio coverage. However, instead of simply mentioning the case, the *Moorhead* Court noted that the radio coverage included "disparaging remarks" about the defendant. *Moorhead*, 18 V.I. at 436.

Examining the coverage in this case, the Court takes notice of the exhibits attached by Defendant Clarke to her motion. These exhibits include a February 26, 2009 article in the *Daily News* titled, "Mistrial declared in Smith Bay murder," an April 3, 2009 article in the *Daily News* titled, "Bail revoked in Smith Bay killing; Charmaine Clark accused of harassing witness;" and an April 8, 2009 article in the *Daily News* titled, "Mother accused of threatening witness." In addition, the affidavit of Joseph Tsidulko, an investigator for Defendant Clarke, is attached, detailing general coverage of the case in the three *Daily News* articles and on WSTA Radio and TV2.

Of significance in this determination is the *Moorhead* Court's observation that, "[a]n element common to most of the above cases is

27

prior publicity putting the defendant in a negative light on the basis of his past life or events not intrinsic to the crime charged." *Moorhead*, 18 V.I. at 436. The *Moorhead* Court examined the publicity surrounding several cases where a change of venue motion was granted and noted those cases "involved publicity much more damaging, inflammatory, and likely to prejudice the entire community against a defendant than what was written here." *Moorhead*, 18 V.I. at 435.

In the same vein as *Moorhead*, in this case, we are confronted with some publicity but it is not the kind of publicity that would tend to put either Defendant in a negative light based on past events or circumstances outside the scope of the charged crimes. While there is some commentary in the articles, for the most part they are limited to the circumstances of the crimes charged, the ensuing trial, mistrial, and subsequent bail proceedings. Since this information is part of the public record, the mere reporting of it in a newspaper is not in and of itself grounds for granting a motion to change venue. Contrary to the assertion in the motion that the coverage is not balanced, Defendant Clarke's counsel is specifically quoted in the April 3, 2009 article as saying, "[i]n regards to Charmaine's actions, there's no indication that she has made any threats or left her home. She has abided by all her terms."

Thus, although the articles and other coverage is "not pleasurable for the defendant, it is not necessarily prejudicial." *Moorhead*, 18 V.I. at 434. At this time, the Defendants have failed to establish the type of inflammatory prejudice necessary for this Court to find that a trial in St. Thomas would be unjust. The language at the end of the *Moorhead* opinion is instructive in this case:

> Voir dire examination during the selection of the jury is designed to weed out biased jurors. The remedy of change of venue is apropos only where voir dire is unable to correct prejudices of members of the jury panel, that is, where pretrial publicity is pervasive and particularly prejudicial. While the material presented to this Court does not reveal a reasonable likelihood that a fair trial is precluded in St. Thomas, the final determination of this issue must await completion of the voir dire of the jury panel.

*Moorhead*, 18 V.I. at 436 (internal citations omitted).

28

## III. Severance of Defendants' Cases

Finally, the Defendants' motion to sever the cases between themselves is without merit. Defendant Clarke's motion claims unsubstantiated "prejudice" against her due to the mistrial and the unsubstantiated claim that an "unrelated gun arrest [of Defendant Austrie] would be splashed across the newspaper," inviting prejudice. This argument is not persuasive.

 Under FED. R. CRIM. P. 14, "the defendant must prove prejudice" to obtain relief from prejudicial joinder with the case of a co-defendant. *U.S. v. Shabazz*, 319 Fed. Appx. 127, 130 (3d Cir. 2009) (Court stated, "vague allegations of prejudice do no, meet this standard," and noted that, limiting instructions given to the jury "cured any potential prejudice that may have existed."). In light of the inadvertently mentioned firearm in the first trial, both Defendants received the cure that they requested from the Court — a mistrial. To now claim that this also entitles Defendant Clarke to sever the trial due to some unsubstantiated prejudice against her is not persuasive.

Accordingly, it is hereby

**ORDERED** that Charmaine Clarke's Motion To Dismiss On Double Jeopardy Grounds, Motion For Change Of Venue Due To Contrived Pre-Trial Publicity And Motion For Severance Of Trials is **DENIED**; and it is further

**ORDERED** that Defendant Isaac Austrie's Motion To Join Defendant Clark's Pending Motion To Dismiss On Double Jeopardy Grounds, Or In The Alternative, For Severance And Transfer To St. Croix is **DENIED**; and it is further

**ORDERED** that copies of this Memorandum Opinion and Order shall be personally delivered to Defendant Isaac Austrie and Defendant Charmaine Clarke; and copies thereof directed to Henry Feurerzeig, Esq. and Michael Quinn, Esq., attorneys for Defendant Austrie; David Cattie, Esq., attorney for Defendant Charmaine Clarke; and Assistant Attorneys General Courtney Reese, Esq. and Jesse Bethel, Esq.